**Bilal MUSTAFOSKI, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–6118.

Court of Appeals of Alaska.

Feb. 27, 1998.

Rex Lamont Butler, Anchorage, for Appellant.

Cynthia L. Herren, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and MANNHEIMER and STEWART, JJ.

## OPINION

MANNHEIMER, Judge.

Bilal Mustafoski was convicted of two counts of third-degree misconduct involving a controlled substance (sale of cocaine), AS 11.71.030(a)(1), and one count of third-degree misconduct involving weapons (felon in possession of a concealable firearm), former AS 11.61.220(a)(1). He appeals his convictions on various grounds. Mustafoski contends that the State violated his right to a speedy trial under Alaska Criminal Rule 45. He also contends that the indictment against him is invalid because the State failed to present exculpatory evidence to the grand jury, and because the State relied on the testimony of a paid informant who arguably had an interest in the outcome of the case. Additionally, Mustafoski argues that the trial judge should have granted him a mistrial when a witness referred to the fact that Mustafoski was a known drug dealer, and when this same witness made a remark that might be interpreted as a reference to Mustafoski's prior trial. Finally, Mustafoski argues that the trial judge abused his discretion when he limited Mustafoski's cross-examination of the State's informant. For reasons explained in this opinion, we affirm Mustafoski's convictions.

### Mustafoski's Rule 45 Claim

■ Mustafoski was originally indicted in April 1991. He went to trial and was convicted, but this court reversed his convictions in *Mustafoski v. State,* 867 P.2d 824 (Alaska App.1994). We remanded Mustafoski's case to the superior court for further proceedings on the indictment—that is, for retrial. The effective date of this remand was February 16, 1994. Under Alaska Criminal Rule 45(c)(5) and Criminal Rule 40(a), the 120–day

time period for bringing Mustafoski to trial started running on the following day (February 17, 1994). *See Nickels v. State,* 545 P.2d 163, 165 (Alaska 1976).

Mustafoski's trial did not start until March 13, 1995—almost thirteen months later. However, on May 5, 1994 (less than three months after we remanded this case to the superior court), Mustafoski told the court that he intended to change his plea. A change of plea hearing was calendared for May 11th, but the hearing was continued for a month, at Mustafoski's request, so that he could obtain more information regarding how his plea would affect his immigration status. On June 9th, Mustafoski asked for another continuance, again so that he could investigate the immigration consequences of his plea. At a status hearing on July 18th, Mustafoski told the court that he still needed more time to try to resolve the case. This time, the court set the case for trial; the scheduled trial date was September 12th, with a calendar call set for September 8th. (Apparently, the parties were to inform the court on September 8th whether the case would in fact be resolved short of trial.) Mustafoski filed a written waiver of Rule 45 through September 8th.

■ When Mustafoski told the court on May 5th that he intended to change his plea, Rule 45 was satisfied. For Rule 45 purposes, Mustafoski's announcement that he intended to change his plea "had the same effect ... as an entry of plea". *Minch v. State,* 934 P.2d 764, 768 (Alaska App.1997), quoting *Morris v. State,* 734 P.2d 1012, 1014 (Alaska App.1987). That is, the running of Rule 45 was terminated on May 5, 1994.

The next event of consequence occurred on September 8, 1994, when Mustafoski told the superior court that he now intended to go to trial. In their briefs to this court, both Mustafoski and the State of Alaska assume that Rule 45 commenced running again on September 8th from where it left off—that whatever the Rule 45 total was on May 5, 1994 (when Mustafoski announced that he intended to change his plea), September 9, 1994 would be that day plus one. We hold, instead, that Rule 45 started anew when Mustafoski announced his renewed intention to go to trial—and that September 9, 1994 was

therefore Day 1 for purposes of calculating Rule 45.

Our decisions in *Minch* and *Morris* establish that, for Rule 45 purposes, a defendant's announcement that he or she intends to plead guilty or no contest is the same as the defendant's actual entry of such a plea. In either situation, the Rule 45 calculation stops because Rule 45 is satisfied.

■ Under Rule 45, if the defendant formally changes his or her plea, then withdraws the plea and demands a trial, Rule 45 is started over at Day 1. *See* Criminal Rule 45(c)(6): "If the defendant is to be tried after withdrawal of a plea of guilty or nolo contendere previously entered, the time for trial shall run from the date of the order permitting the withdrawal." Consistent with our rulings in *Minch* and *Morris,* we conclude that the policy of Rule 45(c)(6) must govern Rule 45 calculations whenever defendants announce that they intend to enter a plea, then later change their minds and again decide to go to trial. That is, it should make no difference whether Rule 45 is restarted by the withdrawal of a formally entered plea or by the announcement that the defendant no longer intends to change his or her plea. In either event, the Rule 45 clock should restart at Day 1.

■ We therefore hold that the Rule 45 calculation in Mustafoski's case began again at Day 1 on September 9, 1994—the day after Mustafoski notified the court that there would be no change of plea and that he was going to trial. On November 29, 1994, Mustafoski filed a motion to dismiss the indictment. This motion tolled the running of Rule 45. *See* Rule 45(d)(1). The superior court held an evidentiary hearing on this motion and ultimately denied Mustafoski's motion on February 15, 1995. Thus, even assuming that the Rule 45 clock ran unabated from September 9, 1994 (the day after Mustafoski announced that there would be a trial) until November 29, 1994 (the day Mustafoski filed his motion to dismiss the indictment), only 82 days had elapsed as of February 15, 1995 (the day the court denied Mustafoski's motion).

Nineteen days later, on March 6, 1995, Mustafoski filed a second motion to dismiss the indictment. This motion, which again tolled the running of Rule 45, was still pending when Mustafoski's trial began on March 13th. This means that the Rule 45 clock had run for only 19 more days—a total of 101 days—when Mustafoski was brought to trial.

Because the 120 days allowed by Criminal Rule 45(b) for bringing a defendant to trial had not expired, the superior court correctly ruled that Mustafoski's right to speedy trial under Rule 45 had not been violated. We recognize that Superior Court Judge *pro tempore* Mark I. Wood employed different reasoning when he denied Mustafoski's motion, but we are authorized to affirm the superior court on any legal ground revealed by the record. *Torrey v. Hamilton,* 872 P.2d 186, 188 (Alaska 1994); *Ransom v. Haner,* 362 P.2d 282, 285 (Alaska 1961); *Millman v. State,* 841 P.2d 190, 195 (Alaska App.1992); *Russell v. Anchorage,* 626 P.2d 586, 588 n. 4 (Alaska App.1981).

### Mustafoski's attacks on his indictment

■ Mustafoski argues that his indictment should have been dismissed because the State relied on the testimony of a paid informant, someone who collected thousands of dollars in reward money for generating cases against various drug dealers and bootleggers. Mustafoski contends that the use of such an informant is an "outrageous[ ] ... violat[ion] [of] the public trust" and a violation of his right to due process. However, Mustafoski cites no legal authority for this proposition.

Ordinarily, given such inadequate briefing, Mustafoski's argument would be waived. *See Petersen v. Mutual Life Ins. Co. of New York,* 803 P.2d 406, 410 (Alaska 1990). However, this court recently held that the use of a paid informer does not violate due process, even when the informer's fee is contingent on the outcome of the case. *Jacobs v. State,* (1998), 953 P.2d 527, 532. We therefore address Mustafoski's contention and reject it.

■ Mustafoski also argues that his indictment should have been dismissed because the State failed to present exculpatory evidence to the grand jury. *See Frink v. State,* 597 P.2d 154, 164 (Alaska 1979). However, the evidence that Mustafoski points to is merely evidence that might be used to impeach the testimony of the informer or to otherwise cast doubt on the State's case. The State's affirmative duty to present exculpatory evidence to the grand jury extends only to evidence that tends to negate the defendant's guilt in and of itself. *State v. McDonald,* 872 P.2d 627, 639 (Alaska App. 1994). We therefore reject Mustafoski's argument.

### Mustafoski's motion for mistrial

■ During his trial, Mustafoski asked the superior court to grant a mistrial on two separate grounds. The first ground was that a witness, Duane Anaruk, referred to the fact that Mustafoski was a known drug dealer. Anaruk, who worked as a cab driver, was the police informant who purchased the cocaine from Mustafoski. The issue arose during the defense attorney's cross-examination of Anaruk.

The defense attorney questioned Anaruk as to whether Anaruk had previously used or seen cocaine. The defense attorney then continued:

> DEFENSE ATTORNEY: Now, as far as a source for cocaine, you knew where you could buy cocaine in Bethel, didn't you?
>
> ANARUK: Well, there's—like I said, driving a cab, you hear a lot of things. And, at that time, Benny [Mustafoski] was—was a known individual. If you wanted coke, go see Benny.

Mustafoski's attorney did not object to Anaruk's answer. Instead, he followed up on it: the defense attorney asked Anaruk if he had targeted Mustafoski because of Mustafoski's reputation as a cocaine dealer.

A little later, the defense attorney asked for a mistrial, arguing that Anaruk's answer had prejudiced the fairness of the proceedings. The trial judge denied the motion, noting that Anaruk's answer had been elicited by the defense attorney and that it was a fair response to the question posed by the defense attorney. The judge offered to give the jury a curative instruction, but Mustafoski did not pursue this offer.

This court faced a similar situation in *Hines v. State*, 703 P.2d 1175 (Alaska App. 1985). During the defense attorney's cross-examination of a government witness, the witness mentioned the defendant's prior convictions. *Id.* at 1178. Despite the potential prejudice of this information, we upheld the trial court's refusal to declare a mistrial. This court relied on the fact that the information had been elicited by the defense, that the witness's answer had been responsive to the question posed by the defense attorney, and that the trial judge had given a curative instruction. *Id. See also Preston v. State*, 615 P.2d 594, 603–04 (Alaska 1980) (upholding a trial judge's refusal to grant a mistrial after the defendant's status as a probationer was inadvertently mentioned). For similar reasons, we uphold the trial judge's refusal to grant a mistrial in Mustafoski's case.

■ Mustafoski raised a second issue in his motion for mistrial. The trial judge had ordered the parties not to refer to Mustafoski's first trial as a "trial", but rather as a "hearing" or a "proceeding". Mustafoski claimed that Anaruk had violated this order during his testimony.

The issue arose during the defense cross-examination of Anaruk. The defense attorney noted that Anaruk had been living in California but had then decided to return to Alaska and cooperate with the authorities by testifying against Mustafoski. The following colloquy ensued:

DEFENSE ATTORNEY: So what was it that was said or done that convinced you to come back on board with them?

ANARUK: Nothing. All I know is that I got a call[;] I was talking with my mom, and [she] said that they were, the district attorney's office and the state troopers' office [were] looking for me. And they said it was important. So I called and I talked to them, and they said that this trial was coming up again, and [they] asked me if I would want to come up [to Alaska], and I said yes.

Mustafoski argues that Anaruk's comment was a violation of the trial court's protective order. This is not clear. Someone with knowledge that Mustafoski had been tried once before might interpret Anaruk's answer (that "this trial was coming up again") as a reference to the fact that this was Mustafoski's second trial. However, the jury assumedly did not know that Mustafoski had been tried once before. To them, Anaruk's answer would not necessarily suggest that this was Mustafoski's second trial; the answer could also be interpreted as meaning that Mustafoski's trial had been rescheduled from a prior date.

Moreover, even if the jury had inferred from Anaruk's answer that this was Mustafoski's second trial, this alone would not significantly prejudice Mustafoski. The real danger of prejudice lay in the jury's finding out that Mustafoski had previously been convicted; Anaruk's answer gave no hint of this. The trial judge offered to instruct the jury that they should not consider Mustafoski's prior trial in their deliberations, nor speculate as to the outcome of that trial. Again, Mustafoski did not pursue this offer. Under these facts, we hold that the trial judge did not abuse his discretion when he denied Mustafoski's motion for mistrial. *Noah v. State*, 887 P.2d 981, 983 (Alaska App.1995).

*Did the trial judge improperly restrict Mustafoski's cross-examination of Anaruk?*

Mustafoski argues that Judge Wood improperly restricted the defense cross-examination of Anaruk in three areas. First, Judge Wood allowed Mustafoski to cross-examine Anaruk regarding the fact that Anaruk had a criminal conviction, but the judge would not allow Mustafoski to elicit the nature of Anaruk's offense. Second, Judge Wood allowed Mustafoski to cross-examine Anaruk regarding his use of drugs on the day before and the day of his cocaine purchase from Mustafoski, and to cross-examine Anaruk regarding his opportunity to purchase drugs before he engaged in the transactions with Mustafoski, but the judge would not allow Mustafoski to ask Anaruk about his general drug use, or about any drug use that occurred after his transactions with Mustafoski. Finally, Judge Wood would not allow Mustafoski to cross-examine Anaruk regarding the fact that Anaruk, acting as a police informant, had drunk alcohol with some people and then had reported these people to the police for illegal sale of alcohol.

Although a defendant's right to cross-examine their accusers is fundamental to our system of justice, "trial judges retain wide latitude ... to impose reasonable limits on ... cross-examination based on concerns about ... harassment, prejudice, confusion of the issues, ... or interrogation that is repetitive or only marginally relevant". *Wood v. State,* 837 P.2d 743, 746–47 (Alaska App. 1992), quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986).

■ The decision in *Wood* guides us in resolving Mustafoski's first claim. In *Wood,* the defendant wished to cross-examine a witness about that witness's prior juvenile record in order to establish the witness's bias. The witness had been charged as a juvenile with sexual abuse of a minor; in disposition of that case, the witness was subjected to a "conduct agreement" (apparently, the equivalent of informal probation). *Id.* at 745. The trial judge precluded all cross-examination regarding the witness's juvenile record and the "conduct agreement". *Id.* We reversed the trial judge's decision. However, we noted that even though a trial judge could not completely preclude cross-examination on this subject, the judge could reasonably have limited cross-examination. We suggested that the witness's bias could have been demonstrated without divulging the specific nature or the details of the juvenile offense: instead, cross-examination could have been limited to the fact that the witness had been involved in delinquent behavior, that this behavior amounted to a felony, and that the witness was subject to a "conduct agreement". *Id.* at 748.

■ In the present case, Anaruk had been charged with a felony (sexual abuse of a minor), but he was ultimately convicted of two misdemeanors. Mustafoski was entitled to elicit these facts and argue that Anaruk might be biased in favor of the State after receiving a lenient disposition of the charge. However, Judge Wood was properly concerned about the possibility that, once the jury heard that Anaruk had been charged with sexual abuse of a minor, they might become prejudiced against Anaruk and distracted from their duty to decide Mustafoski's case on the evidence.

The judge adopted the approach suggested in *Wood.* He allowed Mustafoski to establish that Anaruk had been charged with a class C felony and that this charge was subsequently reduced to two misdemeanors. This information enabled Mustafoski to argue, and the jury to infer, that Anaruk was biased in favor of the State after having received a lenient disposition. We thus uphold Judge Wood's ruling on this issue.

Mustafoski's second claim is that he should have been able to cross-examine Anaruk about his general, on-going use of drugs. Mustafoski argues that if Anaruk used drugs on an on-going basis, he must have had ready access to drugs. According to Mustafoski, proof of Anaruk's ready access to drugs would bolster Mustafoski's contention that Anaruk obtained the cocaine from someone other than Mustafoski. Mustafoski further asserts that anyone who uses drugs on an ongoing basis would be more likely to know how to hide drugs from the police—knowledge that would help Anaruk bring concealed, already-purchased drugs to his transactions with Mustafoski.

Judge Wood had to balance the arguable relevancy of Anaruk's drug use against the rule that "a witness's drug use or addiction is not admissible to prove [the witness's] general unreliability" or bad character. *Moreau v. State,* 588 P.2d 275, 282 n. 20 (Alaska 1978). The record reveals that Judge Wood understood the potential relevance of Anaruk's drug use and tailored Mustafoski's cross-examination to accommodate defense interests, while at the same time preventing Mustafoski from simply attacking Anaruk's character.

Judge Wood allowed Mustafoski to elicit evidence of Anaruk's drug use on the two days preceding his controlled purchase of cocaine from Mustafoski. Judge Wood additionally allowed Mustafoski to elicit evidence of Anaruk's prior use of cocaine and Anaruk's knowledge of cocaine sources prior to his transactions with Mustafoski. Judge Wood did not allow questioning regarding Anaruk's use of drugs other than cocaine, or his use of drugs after April 10, 1991 (the date of the controlled purchase from Mustafoski); the judge ruled that such evidence would be

either collateral or irrelevant. (Moreover, Judge Wood found that Mustafoski's evidence of Anaruk's prior use of LSD was based solely on hearsay and was therefore inadmissible on this separate ground as well.)

Having examined the record, we conclude that Judge Wood did not abuse his discretion when he set these limits on Mustafoski's cross-examination of Anaruk concerning Anaruk's drug use. Under Judge Wood's ruling, Mustafoski was able to elicit the most significant aspects of Anaruk's drug use. The evidence excluded by Judge Wood's ruling was, at best, only marginally relevant. *Wood,* 837 P.2d at 746–47.

██ Mustafoski's final contention is that he should have been able to cross-examine Anaruk concerning an incident in which Anaruk allegedly drank bootleg alcohol with some people, then later informed the police that these people had engaged in the illegal sale of alcohol. Judge Wood ruled that, because the incident in question occurred after Anaruk's purchase of cocaine from Mustafoski, Anaruk's conduct during this incident was a collateral matter and not particularly relevant to the issues at Mustafoski's trial.

Questions pertaining solely to a witness's general credibility are usually deemed collateral. *Jackson v. State,* 695 P.2d 227, 230 (Alaska App.1985). In general, a party cannot cross-examine a witness on collateral matters to show that the witness is an immoral person and thus unworthy of belief. *See Sheakley v. State,* 644 P.2d 864, 872 (Alaska App.1982) (citing *United States v. Lester,* 248 F.2d 329, 334 (2nd Cir.1957)). Further, a trial judge has considerable discretion to limit cross-examination aimed solely at attacking a witness's general credibility. *See Evans v. State,* 550 P.2d 830, 837 (Alaska 1976).

The only apparent relevance of Mustafoski's proposed cross-examination was to portray Anaruk as a police informant who had little conscience—someone who would party with bootleggers and then bust them. We conclude that Judge Wood did not abuse his discretion when he ruled that evidence of this incident lacked sufficient relevance to be admitted.

*Conclusion*

The judgement of the superior court is AFFIRMED.