**Daniel D. DAVIS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–8416.**

Court of Appeals of Alaska.

April 14, 2006.

720

Colleen A. Libbey, Libbey Law Offices, Anchorage, for the Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

**MANNHEIMER, Judge.**

Daniel D. Davis appeals his convictions for two counts of third-degree assault, reckless driving, and driving without a license. Davis contends that his trial was not held within the time limits of Alaska's speedy trial rule, Criminal Rule 45; and he alternatively argues that his constitutional right to a speedy trial was violated. Davis further contends that his trial judge erroneously allowed the State to introduce hearsay testimony in violation of both the Alaska Evidence Rules and the confrontation clause of the United States Constitution, as interpreted in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

For the reasons explained here, we conclude that Davis was brought to trial within the time limits of Alaska Criminal Rule 45, and that his constitutional right to a speedy trial was not violated. However, with respect to the challenged hearsay, we conclude that this testimony was improperly admitted. We further conclude that this testimony may well have affected the jury's decision. Accordingly, we reverse Davis's conviction; he is entitled to a new trial.

### Underlying facts

Davis was charged with several criminal offenses all stemming from a collision between Davis's truck and a motorcycle.

On the afternoon of July 25, 2000, as Davis was driving eastbound on Sixth Avenue in Anchorage, he became embroiled in an altercation with Damien Owens, a motorcyclist. According to Owens and several other witnesses, this altercation began when Owens stopped at a red light and Davis pulled his truck so closely behind Owens that Owens could turn around and touch the truck. Owens was upset by this, and he said so to Davis. Davis then pulled his truck up next to Owens, and the two men began a heated exchange.

This verbal exchange continued as the light turned green and the two drivers began to accelerate down the street. However, Owens soon tried to pull over and end the confrontation. But as Owens slowed down to negotiate a turn, Davis (who was now in front of Owens) swerved his truck and almost hit Owens. To elude Davis, Owens then tried to pass Davis on the left. As Owens accelerated his motorcycle, Davis veered suddenly in Owens's direction, striking both Owens and his motorcycle. Pieces of the motorcycle broke off from the impact, and Davis's vehicle struck Owens in the leg and the hand. As a result of this collision, Owens was pushed into the center turn lane, where he encountered oncoming traffic. After dodging this oncoming traffic, Owens was able to drive off the road.

Anchorage Police Officer Jeff Hobson was on traffic patrol when this episode occurred. Hobson witnessed the entire incident, and after Davis's truck veered into Owens, the officer pulled Davis over and arrested him for felony assault.

After a backup officer arrived, Hobson turned his attention to the passenger in Davis's vehicle, Terrell W. Hodge. During Hobson's interview of Hodge, Hodge told the officer that "basically ... Davis snapped and was totally out of control". Meanwhile, the backup officer observed open beer cans in Davis's truck and smelled alcoholic beverages on Davis's person. The backup officer also learned from Davis that he had smoked marijuana earlier that day.

At trial, Davis offered an exculpatory version of these events. He contended that only Owens became enraged during their encounter at the traffic light. Davis claimed that he himself only wished to peacefully distance himself from Owens. Davis conceded that he had driven his truck to the right toward Owens's lane of travel, but he claimed that this movement was not an attempt to strike Owens. Rather, Davis testified that he believed Owens was slowing down, preparing to make a right turn, and Davis moved his truck into the right lane ahead of Owens in an attempt to pass a slow-moving motor home that was directly ahead of him. Davis further claimed that when his truck veered toward Owens the second time (this time, veering to the left), he (Davis) was not in control of the truck. Instead, according to Davis, the truck veered to the left because his pas-

senger, Hodge, grabbed the steering wheel in a misguided effort to prevent Davis's truck from hitting Owens on the right. Davis further testified that his vehicle did not actually hit the motorcycle; rather, he claimed that the only contact between Owens and Davis's truck occurred when Owens angrily punched the side-view mirror of Davis's truck as he drove by.

After listening to these two competing versions of events, the jury found Davis guilty on all charges.

### Davis's Rule 45 claim

■ The speedy trial "clock" in this case began running on July 26, 2000, when Davis was served with an information charging him with various offenses stemming from his encounter with Owens the previous day. Davis's trial did not begin until February 4, 2002.

Davis's case involves many different periods of time that the superior court found to be excluded from the Rule 45 calculation. Davis challenges several of the superior court's rulings. However, the two crucial events for Rule 45 purposes occurred on November 22, 2000, and on April 9, 2001.

Using July 26, 2000 as a starting date, the 120 days allowed by Rule 45 for bringing Davis to trial would have expired on November 23, 2000. But Davis filed several motions during that four-month period that tolled the running of Rule 45. Most importantly, Davis filed a motion for co-counsel status on November 14, 2000, and a suppression motion on November 22, 2000. Davis's motion for co-counsel status was not decided until January 30, 2001, and his suppression motion remained undecided in early April 2001—even though Davis's trial was scheduled for April 9th.

The superior court planned to hold an evidentiary hearing on April 4, 2001, (i.e., five days before Davis's scheduled trial). But on April 4th, Davis's attorney notified the superior court that Davis wanted to schedule a change-of-plea hearing. Based on this announcement, the superior court canceled the evidentiary hearing and set a change-of-plea hearing for April 9th (the day on which

Davis's trial was supposed to have commenced).

But at the change-of-plea hearing, Davis's attorney declared that he had not been successful in arranging a package deal that included a negotiated disposition of some other misdemeanor charges that Davis was facing in Palmer. Because of this, Davis's attorney said that there would be no change of plea that day, and he asked the superior court to set another pre-trial conference for the following week. Obviously, Davis's case never settled; instead, Davis went to trial.

Under this Court's decision in *Mustafoski v. State*, 954 P.2d 1042, 1044 (Alaska App. 1998)—a decision now codified in Criminal Rule 45(c)(5)—Davis's announcement on April 9th that he did not intend to change his plea had the effect of re-setting the Rule 45 clock to 0. Thus, April 10, 2001 became Day 1 for Rule 45 purposes.

Indeed, on the day after the aborted change-of-plea hearing, Superior Court Judge Larry D. Card issued an order in which he notified the parties that, based on Davis's having scheduled a change-of-plea hearing, and then having failed to change his plea, the judge intended to re-start the Rule 45 calculation at Day 1. Judge Card gave the parties five days to object to his ruling; neither party objected.

With a new Day 1 of April 10, 2001, the 120 days allowed for bringing Davis to trial would normally have expired on August 7, 2001. However, it must be remembered that Davis's suppression motion was still pending. Thus, even though the Rule 45 clock had been re-set, it still had not commenced running again.

Moreover, on July 2, 2001, Davis asked the superior court to remove his court-appointed counsel from the case. Davis's request for a new attorney was not resolved until August 23rd, when the superior court appointed a new attorney to represent Davis.

In part because of the dispute concerning Davis's legal representation, the evidentiary hearing on his suppression motion was not held until November 29, 2001. Judge Card issued his ruling on the suppression motion the next day.

In sum, even though the Rule 45 clock was re-set to 0 on April 9, 2001, the clock did not begin running again until December 1, 2001 (the day after Judge Card decided the suppression motion). And, as explained above, Davis's trial commenced on February 4, 2002—that is, 65 days later. Davis was therefore brought to trial within the time limits of Criminal Rule 45.

Davis presents two major objections to the foregoing analysis.

■ First, Davis asserts that his attorney unreasonably delayed filing the suppression motion of November 22, 2000. Davis argues that if his attorney had been diligent and had paid proper attention to Davis's case, this suppression motion could have been filed much earlier.

The primary answer to this contention is that Criminal Rule 45 does not concern itself with such matters. As the Alaska Supreme Court and this Court have repeatedly said, Rule 45 must be interpreted so that the speedy trial calculation rests on objectively ascertainable events—such as the filing of a suppression motion.[1] This policy would be defeated if we allowed defendants to challenge Rule 45 calculations by raising after-the-fact attacks on the diligence of their attorneys or the reasonableness or competence of their attorney's actions.

A second answer to Davis's argument is found in the particular facts of Davis's case. At a pre-trial hearing on October 12, 2000 (that is, approximately six weeks before the suppression motion was filed), Davis's attorney informed the superior court that she needed more time to file pre-trial motions, including a motion to suppress. At that time, Davis's trial was scheduled for October 23rd—only eleven days in the future. Thus, to honor the defense attorney's request for additional time, the superior court necessarily had to delay the trial.

Judge Card asked Davis's attorney if she was willing to waive the additional time under Rule 45, and the defense attorney agreed to waive 42 days, thus allowing Davis's trial to be rescheduled for December 4, 2000. But Davis objected to this delay. Davis told Judge Card that his attorney had failed to act diligently, and that she should have filed the pre-trial motions long before. Davis asserted that his attorney's lack of diligence was essentially forcing Davis to waive his speedy trial rights.

After listening to Davis express this dissatisfaction with his attorney's conduct, Judge Card informed Davis that he had two options: Davis could direct his attorney to waive any further pre-trial motions, thus regaining the October 23rd trial date, or Davis could agree to have his attorney pursue these motions, with the result that Davis's trial would be delayed.

Despite this invitation from Judge Card, Davis never expressed a desire to waive the contemplated motions. As noted above, the suppression motion was filed on November 22, 2000. And five days later, when the parties assembled in court to address the pre-trial motions, Davis stated that he did not want his attorney to withdraw those motions—even though, by that point, the superior court had rescheduled Davis's trial to mid-January 2001.

For both of these reasons, we conclude that Davis can not attack the amount of time it took his attorney to research, draft, and file the November 22nd suppression motion.

■ Davis's second major objection to our Rule 45 analysis involves the aborted change-of-plea hearing on April 9, 2001, and the consequent re-setting of the Rule 45 clock to 0. Davis argues that he should not be bound by his attorney's act of requesting a change-of-plea hearing. Davis contends that he was never willing to change his plea, that his attorney scheduled the change-of-plea hearing without his consent, and that Judge Card committed error by never asking Davis to personally ratify his attorney's action.

There was no error. Rule 45(c)(5) does not require the trial court to obtain a defen-

---

**1.** See, e.g., Deacon v. State, 575 P.2d 1225, 1228–29 (Alaska 1978); Snyder v. State, 524 P.2d 661, 663–64 (Alaska 1974); State v. Clouatre, 516 P.2d 1189, 1191 (Alaska 1973); Wardlow v. State, 2 P.3d 1238, 1244 (Alaska App.2000); State v. Angaiak, 847 P.2d 1068, 1072–73 (Alaska App. 1993); Russell v. Anchorage, 626 P.2d 586, 589 (Alaska App.1981).

dant's personal assent before acting on a defense attorney's request to schedule a change of plea. Nor does the rule require the court to address the defendant personally to ascertain the defendant's position when the defense attorney subsequently announces that no plea agreement has been reached.

The facts of *Mustafoski v. State* are instructive. In *Mustafoski*, the defense attorney told the superior court that the defendant intended to change his plea, but the attorney wanted to delay the entry of the plea until he could investigate whether a conviction would affect Mustafoski's immigration status.[2] The following month, the defense attorney told the court that he and the State were still negotiating the resolution of the case.[3] After another two months, the defense attorney finally announced that there would be no plea bargain, and that the case would go to trial.[4] We held that, under these facts, the Rule 45 clock was re-set to 0 on the day that the defense attorney announced that there would be no negotiated settlement of the case.[5]

Davis's case presents similar facts. On the day of a scheduled evidentiary hearing, and only five days before Davis's scheduled trial, Davis's attorney asked the superior court to schedule a change-of-plea hearing. In reliance on that request, the superior court canceled the evidentiary hearing and set a change-of-plea hearing in place of the previously scheduled trial. But at the change-of-plea hearing, Davis's attorney declared that Davis would not be changing his plea that day—because the attorney had not been successful in arranging a package deal that would resolve not only Davis's pending Anchorage charges, but also some other misdemeanor charges that Davis was facing in Palmer.

These are essentially the same circumstances that led us to re-set the Rule 45 clock

in *Mustafoski*, and we reach the same result here.

Davis points out that the pertinent portion of Criminal Rule 45(c)(5) refers to "the defendant" rather than to "the defense attorney":

> When a defendant who previously informed the court of an intention to plead guilty or nolo contendere notifies the court that the defendant now intends to proceed to trial, the time for trial shall run from the date of that notification.

Based on this wording, Davis argues that this rule only takes effect when the defendant *personally* informs the court that they intend to plead guilty or no contest, and then later *personally* informs the court that they now wish to go to trial.

We do not believe that the Alaska Supreme Court intended Rule 45(c)(5) to be read in this fashion. Even though the text of Rule 45(c)(5) refers to "the defendant" rather than to "the defense attorney", the Alaska court rules often use the term "defendant" to mean, or at least to include, the defense attorney (unless the context indicates a narrower meaning).

For example, Criminal Rule 45(c)(2) declares that if a criminal charge "is dismissed upon motion of the defendant", the speedy trial calculation shall begin running from the date of service of any renewed charge. Obviously, most motions to dismiss are filed by defense attorneys rather than by the defendants themselves. There has never been an appellate decision suggesting that Rule 45(c)(2) applies only after the trial court addresses the defendant personally and ascertains that the defendant has personally assented to the filing of the motion to dismiss.

We further note that several other provisions of the criminal rules employ the word "defendant" when the context clearly suggests "defense attorney".[6]

---

2. *Mustafoski*, 954 P.2d at 1044.

3. *Id.*

4. *Id.*

5. *Id.*

6. Other examples of this broader usage include: Criminal Rule 6(m) (a defendant's right to listen to the electronic record of the grand jury proceedings, to obtain a transcript of those proceedings, and to examine the exhibits presented to the grand jury); Criminal Rule 11(b) (a defendant's right to request a reasonable delay to decide what plea to enter); Criminal Rule 12(e)

We therefore conclude that Criminal Rule 45(c)(5)'s use of "defendant" instead of "defense counsel" does not bespeak an intention on the part of the Alaska Supreme Court to require the defendant's personal intervention or the defendant's express ratification of their attorney's statements to the court.

Accordingly, we affirm Judge Card's ruling that Davis was brought to trial within the time limits of Criminal Rule 45.

### Davis's alternative claim based on the constitutional right to speedy trial

In addition to attacking his trial date on Rule 45 grounds, Davis also argues that the 19–month interval between the day he was charged (July 26, 2000) and the day his trial began (February 4, 2002) violated his constitutional right to a speedy trial. We reject this contention because, as explained above, the major portion of this delay is attributable to Davis's own actions or the actions of the attorneys representing him.

Davis relies primarily on *Glasgow v. State*, 469 P.2d 682 (Alaska 1970), where the Alaska Supreme Court declared that a delay of 14 months violated the defendant's constitutional right to a speedy trial.[7] But a careful reading of *Glasgow* shows that the supreme court, in calculating this delay of 14 months, "[e]xclud[ed] those periods of time that [could] properly be attributed to the [defendant]".[8]

A year after *Glasgow*, the supreme court explicitly reiterated this principle in *Rutherford v. State*, 486 P.2d 946, 952 n. 15 (Alaska 1971). This rule—that defendants can not base speedy trial claims on delays attribut-able to themselves—has been the accepted Alaska law on this subject ever since.[9]

Accordingly, we reject Davis's claim that he was denied his constitutional right to a speedy trial.

### The admissibility of the hearsay testimony describing the out-of-court statements of Terrell Hodge

As explained above, Terrell Hodge was the passenger in Davis's pickup truck during the incident in question. Hodge was therefore a potential witness at Davis's trial. However, after Hodge consulted an attorney, he decided to claim his privilege against self-incrimination, and the superior court upheld this claim of privilege.

Following this ruling, the prosecutor announced that he wished to introduce hearsay testimony concerning certain statements that Hodge made when he was interviewed by Officer Hobson a few minutes after the collision. Specifically, the prosecutor made an offer of proof that, during this on-the-scene interview, Hodge told Hobson that Davis had gotten into an argument with the motorcyclist and that Davis had "snapped", succumbing to an "uncontrollable case of 'road rage'."

The prosecutor argued that Hodge's out-of-court statements were admissible under either of two hearsay exceptions: the "present sense impression" exception (Alaska Evidence Rule 803(1)) or the "excited utterance" exception (Alaska Evidence Rule 803(2)). Davis's attorney responded that neither hearsay exception applied to Hodge's statements. The defense attorney also argued that admission of this hearsay would violate

(the effect of a defendant's failure to raise defenses or objections that, by law, must be made before trial); Criminal Rule 16(b)(1)(B) (requiring the prosecuting attorney to inform the defendant of the names and addresses and *curricula vitae* of expert witnesses, as well as summaries of their proposed testimony); Criminal Rule 16(c)(4) (requiring the defendant to inform the prosecuting attorney of the same sorts of information concerning expert witnesses); Criminal Rule 16(c)(5) (requiring the defendant to notify the prosecuting attorney of certain intended defenses); Criminal Rule 18(e) (a defendant may move for a change of venue to an alternate approved court location); Criminal Rule 27(a)(2) (describing the defense opening statement: "The defendant, or the defendant's counsel, may then state the defense, and may briefly state the evidence [that] the defendant expects to offer in support of it."); Criminal Rule 29(a) (allowing the trial judge to grant a judgement of acquittal "on motion of a defendant").

7. *Glasgow*, 469 P.2d at 688–89.

8. *Id.* at 688.

9. See *Alvarez v. Ketchikan Gateway Borough*, 91 P.3d 289, 295 (Alaska App.2004); *Springer v. State*, 666 P.2d 431, 435 (Alaska App.1983).

Davis's constitutional right to confront the witnesses against him.

After the two attorneys staked out their respective positions, the prosecutor called Officer Hobson to present foundational testimony in support of the proposed hearsay.

Hobson testified that, after the backup officer arrived on the scene and took custody of Davis, Hobson returned to the pickup truck and interviewed Hodge. Hobson's conversation with Hodge occurred within five to ten minutes after the traffic stop.

When the prosecutor asked Hobson to relate what Hodge had told him, Hobson responded:

*Hobson:* [Hodge said] basically that Mr. Davis had a fit of road rage; [he] snapped.... [Hodge] said [that] the motorcyclist had gotten in an argument with Davis; Davis just snapped and had an uncontrollable case of road rage. [Hodge] said that Davis had [had] a similar case of road rage once before, but [that] he, Hodge, had been able to talk him out of it, and nothing [had] happened [before] such as what happened on this day.

The prosecutor then asked Hobson to describe Hodge's demeanor during this interview. Hobson replied that Hodge was "calm and pleasant".

Based on Hobson's description of the interview, Judge Card ruled that Hodge's out-of-court statements were definitely admissible as statements of present sense impression, and perhaps also as excited utterances:

*The Court:* There is no question ... that [Hodge had] time for reflective thought, [and that fact goes] into the calculations of the court. But [Hodge] is now unavailable, [and he] did perceive the events [in question]. He was a passenger in Mr. Davis's vehicle, and he made this statement immediately after sensing whatever this occurrence was, and his statement describes [the cause of] that occurrence. Now, that means that his statement [is] not ... excluded by the hearsay rule.

. . .

[The hearsay exception for] present sense impression, unlike the excited utter-

ance [exception], does not require that the declarant be emotional [or even] emotionally affected ... by the occurrence. Instead, it's the spontaneity, ... and also the consequent lack of time for reflective thought, [and also] safety from memory lapse, [that] are considered sufficient under the rules to establish the statement's reliability.

Judge Card recognized that Hodge's statements were not, strictly speaking, spontaneous, since they were elicited by Hobson's questions. Nevertheless, Judge Card concluded that the two hearsay exceptions applied:

*The Court:* [Even] if [the statements were elicited in response to] a question, if it comes in as a [statement of] present sense impression, which would be more likely [here], it can also come in as an excited utterance—because I think [that] this event, as I heard the description by Mr. Owens and the other witnesses who have testified, [this event] was something extraordinary that happened in a very short period of time. So it was a startling event. [And] this statement [described] Mr. Hodge's mental impressions ... shortly thereafter.

. . .

[The] statement was made shortly after the incident occurred, so it is at least a present sense impression.

. . .

Based upon what I've heard, I'm going to let [the testimony] in as a [statement of] present sense impression. It could also be considered [an] excited utterance; they are so closely related. The spontaneity is there. The requirements of [Evidence Rules] 803(1) and (2)[are] met.

(Judge Card prohibited the prosecutor from eliciting testimony regarding Hodge's statement about the alleged prior incident in which Davis lost control of his temper, and the judge also prohibited any reference to the term "road rage", because he concluded that this term was too imprecise and potentially prejudicial.)

Following this ruling, Officer Hobson took the stand again (this time in the presence of

the jury) and related the statements that Hodge made during the post-collision interview (with the redactions described in the preceding paragraph).

In this appeal, Davis renews his contention that this hearsay testimony was not admissible under either Evidence Rule 803(1) (statement of present sense impression) or Evidence Rule 803(2) (excited utterance). In addition, Davis argues that admission of the challenged testimony violated his right to confrontation as interpreted by the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We do not reach the confrontation issue because we agree with Davis that the testimony was not admissible under either of the suggested exceptions to the hearsay rule.

### (a) Explanation of the two hearsay exceptions at issue in this case

The two hearsay exceptions at issue here—for statements of present sense impression, and for excited utterances—are based on similar rationales, and hearsay statements relating to startling occurrences (such as the motor vehicle collision at issue in this case) are often admissible under both theories. But Davis's appeal requires us to examine those two exceptions separately.

An out-of-court statement is a "statement of present sense impression" if it describes or explains an event, and if it was "made while the declarant was perceiving the event . . ., or immediately thereafter". Alaska Evidence Rule 803(1). The defining characteristic of a statement of present sense impression is its spontaneity—the speaker's lack of reflection about what he or she should be saying. Under Rule 803(1), the presumption

of spontaneity (and, thus, the presumption of trustworthiness) arises from the fact that the speaker utters the statement while observing the event or condition at issue, or "immediately thereafter". In other words, there is hardly any interval between the observation and the statement describing the observation—and, thus, no time for reflection.

As explained in the Commentary to the Alaska Evidence Rules, "the underlying theory of [Rule 803(1)] is that [the] substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation".[10]

Unlike excited utterances, statements of present sense impression do not have to be inspired by exciting or startling occurrences.[11] Of course, a startling event may inspire a statement of present sense impression: "Look at that! That truck just ran a red light." But an utterance relating to a much more mundane (and potentially boring) observation could also qualify as a statement of present sense impression: "See that herd of cows? All of them are white." It is not the emotional state of the speaker, but rather the lack of an appreciable interval between the observation and the statement, that gives rise to the presumption that the statement is trustworthy.

In contrast, an out-of-court statement is admissible as an "excited utterance" if it was "made while the declarant was under the stress of excitement caused by the event or condition" to which the statement relates. Alaska Evidence Rule 803(2). As is true with statements of present sense impression, the defining characteristic of an excited utterance is its spontaneity—the speaker's lack of reflection about what he or she should be saying. But under Rule 803(2), the presump-

---

**10.** Commentary to Alaska Evidence Rules 803(1) and (2), second paragraph. See also the Federal Advisory Committee's Note to proposed Federal Evidence Rule 803(1), quoted in Stephen A. Saltzburg, Michael M. Martin, and Daniel J. Capra, *Federal Rules of Evidence Manual* (8th ed.2002), § 803.02, Vol. 4, p. 803–14.

**11.** *See* John W. Strong *et alia, McCormick on Evidence* (5th ed.1999), § 271, Vol. 2, p. 202. Two famous scholars of evidence law, John Henry Wigmore and James Bradley Thayer, disagreed concerning the admissibility of non-excited

statements of present sense impression. Wigmore took the position that the out-of-court statement should not be admitted unless the speaker was under the stress of excitement, while Thayer took the position that even a non-excited statement should be admitted, so long as it was made contemporaneously with the event or condition perceived. For a critique of Wigmore's approach to this topic, and an explanation of how the position espoused by Thayer ultimately carried the day, see *McCormick*, § 271, Vol. 2, pp. 200–02.

tion of spontaneity (and, thus, the presumption of trustworthiness) arises from the fact that the speaker is laboring under the emotional stress engendered by the event.

As stated in the Commentary to the Alaska Evidence Rules, "[t]he theory of [Rule 803(2)] is ... that circumstances may produce a condition of excitement which temporarily stills the [speaker's] capacity for reflection and produces utterances free of conscious fabrication."[12] Thus, when an out-of-court statement is offered as an excited utterance, the key factual question is not the interval between the event and the statement, but rather "the duration of the [speaker's] state of excitement".[13]

### (b) Analysis of Hodge's out-of-court statement as a potential statement of present sense impression

■ As explained above, the key factor in deciding whether Hodge's out-of-court statement should be deemed a statement of present sense impression is the assessment of whether there was substantial contemporaneity between the event being explained (the collision) and Hodge's explanatory statement.

Here, there was no strict contemporaneity; rather, there was an interval of five to ten minutes between the event and the statement. But as explained above, the Commentary to Evidence Rule 801(1) does not speak of strict contemporaneity; rather, it speaks of "substantial" contemporaneity. And the *Federal Rules of Evidence Manual* takes the approach that, for purposes of assessing substantial contemporaneity, there is no fixed limit on the interval between the event and the explanatory statement:

> While contemporaneity is critical to [the statement's] admissibility, there is ... no talismanic time period for admission [of a statement] as a present sense impression.

Admissibility is determined on a case-by-case basis, [with the judge] investigat[ing] the circumstances of the statement to determine whether the declarant had significant time for reflection.

Stephen A. Saltzburg, Michael M. Martin, and Daniel J. Capra, *Federal Rules of Evidence Manual* (8th ed.2002), § 803.02, Vol. 4, p. 803–15.

Another text on the law of evidence, John W. Strong *et alia, McCormick on Evidence* (5th ed.1999), appears to advocate a tighter definition of the present sense impression hearsay exception. Referring to Evidence Rule 803(1)'s requirement that the statement be made while the speaker was actually perceiving the event or "immediately thereafter", *McCormick* declares:

> While [the] principle [of this hearsay exception] might seem to call for [its] limitation to [statements that share] exact contemporaneity [with the event being described or explained], some allowance must be. made for the time needed for translating observation into speech. Thus, the appropriate inquiry is whether sufficient time elapsed [between the event and the explanatory statement] to have permitted [the speaker to engage in] reflective thought.

*Id.,* § 271, Vol. 2, p. 203.

■ We acknowledge that there are some court decisions that have allowed the admission of "present sense impression" statements that were made as much as twenty minutes after the event described or explained.[14] But, as stated in both the *Federal Rules of Evidence Manual* and *McCormick on Evidence*, the issue is not the exact amount of time between the event and the statement. Rather, the issue is whether, under the circumstances of the particular case, the interval between the event and the

---

12. Commentary to Alaska Evidence Rules 803(1) and (2), third paragraph (citing J. Wigmore, *Evidence in Trials at Common Law*, § 1747, Vol. 6, p. 135).

13. Commentary to Alaska Evidence Rules 803(1) and (2), fifth paragraph.

14. *See United States v. Beck,* 122 F.3d 676, 681–82 (8th Cir.1997); *United States v. Blakey,* 607 F.2d 779, 785–86 (7th Cir.1979); *United States v. Mejia–Vélez,* 855 F.Supp. 607, 614 (E.D.N.Y. 1994); *Miller v. Crown Amusements, Inc.,* 821 F.Supp. 703, 706 (S.D.Ga.1993); *State v. Odom,* 316 N.C. 306, 341 S.E.2d 332, 335–36 (1986). *But see Hilyer v. Howat Concrete Co.,* 578 F.2d 422, 426 n. 7 (D.C.Cir.1978) (interval of at least 15 minutes held too long for the out-of-court statement to qualify as a statement of present sense impression).

statement gave the speaker a significant opportunity to reflect on what he or she should say. . If so, then the hearsay statement does not qualify for admission under the present sense impression exception.

In the present case, Officer Hobson happened to be on the scene to witness the collision between Davis's truck and the motorcycle. He stopped Davis's vehicle almost immediately. And Hobson interviewed Hodge some five to ten minutes after this traffic stop. Thus, the interval might be viewed as relatively short. Nevertheless, during this interval, Hodge sat in the truck and watched while Hobson handcuffed Davis and placed him under arrest. It was obvious that Davis was in trouble—that the police believed that Davis had just committed a crime.

Moreover, the testimony presented by the prosecution suggested that, in the moments leading up to the collision, Hodge was actively involved in discussions with Davis concerning what to do about, or to, Owens. Owens testified that, during his moments next to the truck, Davis and Hodge were talking back and forth and looking at Owens. And Officer Hobson testified that, during the exchange between Owens and the two occupants of the truck, the passenger—that is, Hodge—was "jabbering" at Owens, and "there was a lot of arm swinging [by both Hodge] and [Owens]".

In other words, even though Hodge was interviewed within five to ten minutes after the traffic stop, he was sitting alone during this time, he had been personally involved in the event under investigation, he was able to observe what was happening to his friend Davis, and he had time to reflect on his own situation. Under the circumstances of this case, those five to ten minutes offered Hodge a significant opportunity to reflect on what he should say to the police in order to avoid sharing criminal or civil liability for what had happened.

For these reasons, we conclude that Judge Card abused his discretion when he ruled that Hodge's statement could be admitted under the present sense impression exception to the hearsay rule.

### (c) Analysis of Hodge's out-of-court statement as a potential excited utterance

■ As explained above, the interval between the collision and Hodge's statement is not so critical when deciding whether Hodge's statement qualifies as an excited utterance. Rather, our inquiry focuses on whether Hodge was under the stress of excitement caused by the collision when he made his statement.

In this case, the problem for the State is that there is no evidence that Hodge was under the stress of excitement when he made the statement. Clearly, as Judge Card noted, the collision would have been an exciting or startling event for most people. But there is no evidence that Hodge was still feeling excitement when he gave his statement to Hobson. In fact, Hobson testified that Hodge's demeanor was just the opposite— that Hodge was "calm and pleasant" when Hobson was questioning him.

See *Beech Aircraft Corp. v. Harvey*, 558 P.2d 879, 884 (Alaska 1976), where our supreme court ruled that certain out-of-court statements were not admissible under the "excited utterance" hearsay exception because the out-of-court statements were "a deliberative narration of past events", and the speaker "was not emotionally upset when questioned, but rather appeared calm."

For this reason, we conclude that Judge Card abused his discretion when he ruled that Hodge's statement could be admitted under the excited utterance exception to the hearsay rule.

### (d) Why we reject the State's argument that the admission of Hodge's out-of-court statement was harmless error

■ The State argues that even if Hodge's out-of-court statement to Officer Hobson should not have been admitted, the admission of this evidence was nonetheless harmless error. We disagree. The crucial factual dispute in this case was not the physical interaction between Davis's truck and the motorcycle. Rather, Davis's trial centered on two other issues: Davis's state of mind during the encounter with the motorcyclist, and whether Davis was personally in control of

his vehicle when it veered to the left and struck the motorcycle.

Hodge was the only person, other than Davis, who had direct knowledge of the facts pertinent to these issues. We note, moreover, that during the State's summation to the jury, the prosecutor expressly relied on Hodge's statement that Davis had "snapped". Given the importance of this evidence to the main factual dispute at Davis's trial, we conclude that the jury's decision was substantially affected by the hearsay evidence that Hodge, when interviewed shortly after the collision, told the police that Davis had "snapped" and that Davis was "totally out of control".

### Conclusion

For the reasons explained here, we hold (1) that Davis was brought to trial within the time limits of Alaska Criminal Rule 45, but (2) that Davis's trial was flawed by the introduction of the hearsay evidence describing Hodge's post-collision statement to Officer Hobson. Accordingly, the judgement of the superior court is REVERSED. Davis is entitled to a new trial.