NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>*. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

# IN THE COURT OF APPEALS OF THE STATE OF ALASKA

RALPH HERNANDEZ,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13618
Trial Court No. 3AN-11-10733 CR

**O P I N I O N**

No. 2772 — February 9, 2024

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: Renee McFarland, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Heather Stenson, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge HARBISON, writing for the Court and concurring separately.
Judge ALLARD, concurring.
Judge TERRELL, dissenting.

Although a speedy trial is guaranteed to a criminal defendant by the United States and Alaska constitutions,[1] Ralph Hernandez was not brought to trial until over seven years after his arrest. During the trial court proceedings, Hernandez was represented by a series of court-appointed attorneys, none of whom objected to the delay in bringing the case to trial. Hernandez himself did object, however, and he also moved for dismissal of the charges on constitutional speedy trial grounds. The trial court summarily denied his motions without conducting an evidentiary hearing. The case proceeded to trial, and Hernandez ultimately was convicted of three counts of first-degree sexual abuse of a minor and one count of attempted second-degree sexual abuse of a minor.[2]

Hernandez appeals his convictions, arguing that the delay violated his right to a speedy trial.

For the reasons explained in this opinion, we conclude that the length of the pretrial delay was presumptively prejudicial under both the Alaska and the United States constitutions, and accordingly the case must be remanded to the trial court so that it may conduct an evidentiary hearing to develop a sufficient record on which to evaluate the merits of Hernandez's constitutional speedy trial claims.

*The pretrial delay was presumptively prejudicial requiring remand for an evidentiary hearing*

The right to a speedy trial is guaranteed by Article I, Section 11 of the Alaska Constitution and by the Sixth Amendment to the United States Constitution. The Alaska Supreme Court recently explained the reason for this constitutional protection:

---

[1]   U.S. Const. amend. VI; Alaska Const. art. I, § 11.

[2]   AS 11.41.434(a)(1) and AS 11.41.436(a)(1) & AS 11.31.100(a), respectively. Hernandez was also indicted for two counts of possessing child pornography in violation of AS 11.61.127, but these charges were severed after pretrial litigation by Hernandez's attorney.

[T]he core evil that the right was originally designed to prevent was lengthy pretrial incarceration. But modern cases have recognized that the right has broader purposes. Inordinate delay, regardless of incarceration, may impair a defendant's ability to prepare an effective defense. And regardless of prejudice in attempting to defend on the merits, long delay may "seriously interfere with [a] defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family[,] and his friends."[3]

The United States Supreme Court has similarly stated that the right to a speedy trial ensures that defendants are treated fairly.[4] Furthermore, in *Barker v. Wingo*, its seminal case on this subject, the Court emphasized that society also has an interest in the swift resolution of criminal cases that "exists separate from, and at times in opposition to, the interests of the accused."[5] The Court stated:

The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes. . . . Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. [The] delay between arrest and punishment may have a detrimental effect on rehabilitation.

If an accused cannot make bail, he is generally confined, . . . in a local jail [which] contributes to the overcrowding and generally deplorable state of those institutions. Lengthy exposure to these conditions "has a

---

[3]     *State v. Wright*, 404 P.3d 166, 171-72 (Alaska 2017) (quoting *United States v. Marion*, 404 U.S. 307, 320 (1971)).

[4]     *Barker v. Wingo*, 407 U.S. 514, 519 (1972).

[5]     *Id.*

destructive effect on human character and makes the rehabilitation of the individual offender much more difficult." At times the result may even be violent rioting. Finally, lengthy pretrial detention is costly . . . amount[ing] to millions across the Nation. In addition, society loses wages which might have been earned, and it must often support families of incarcerated breadwinners.[6]

In explaining that the right to a speedy trial might actually work against the interests of the accused, the *Barker* court observed: "Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so."[7] For this reason, unlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to a speedy trial does not *per se* prejudice the accused's ability to defend themselves.

The Supreme Court ultimately concluded that the "amorphous quality" of the right to a speedy trial means that any inquiry into a speedy trial claim "necessitates a functional analysis of the right in the particular context of the case."[8] It thus adopted a balancing test, identifying "some of the factors" which courts should assess in determining whether the defendant's right to speedy trial has been violated.[9] These factors are: the length of delay, the reason for the delay, the defendant's assertion of the right, and the prejudice to the defendant.[10] Alaska's appellate courts subsequently

---

6   *Id.* at 519-521 (citations omitted).

7   *Id.* at 521.

8   *Id.* at 522.

9   *Id.* at 530.

10   *Id.* at 530-32.

adopted this test for use in evaluating speedy trial claims under the Alaska constitution.[11]

Despite *Barker*'s rejection of a "rigid approach" to determining whether a defendant's right to speedy trial has been violated and its conclusion that speedy trial claims must be assessed in the context of a particular case, the United States Supreme Court stopped short of requiring such an assessment in all cases.[12] Instead, it held that the length of the delay must be used as a starting point to determine whether it is necessary for a court to conduct such an assessment.[13] In order to trigger a speedy trial analysis, the defendant must allege that the interval between accusation and trial has crossed the threshold dividing ordinary delay from presumptively prejudicial delay. In other words, the defendant must establish that their case was not prosecuted with "customary promptness."[14] If the defendant makes this showing, then the court should conduct an inquiry, applying and balancing the *Barker* factors, to determine whether the defendant's constitutional right to a speedy trial has been violated.

There is no question that the required showing has been made here. In *Doggett v. United States*, the United States Supreme Court noted that delays "approach[ing] one year" are generally sufficient to trigger review of the *Barker*

---

[11]  *State v. Wright*, 404 P.3d 166, 178 (Alaska 2017); *State v. Mouser*, 806 P.2d 330, 340 (Alaska App. 1991).

[12]  *Barker*, 407 U.S. at 529-30.

[13]  *Id.* at 530.

[14]  *Doggett v. United States*, 505 U.S. 647, 652 (1992).

factors.[15] Here, the delay from the time of arrest to the beginning of trial was just over seven years. Such a lengthy delay clearly requires analysis of the *Barker* factors.[16]

In arguing otherwise, the State relies on Alaska Supreme Court case law that pre-dates Alaska's adoption of the *Barker* balancing test. Under this prior case law, the total length of delay is immaterial.[17] Instead, to determine whether the length of delay qualifies as presumptively prejudicial, the delay that is attributable to the defendant is subtracted from the total length of delay.[18] If the remaining length of delay is more than fourteen months, Alaska courts have treated the delay as "presumptively prejudicial" for purposes of the Alaska constitution's speedy trial right.[19] If the remaining length of delay is less than eight months, the defendant must demonstrate actual prejudice.[20]

---

[15] *Id.* at 652 n.1. *See also United States v. Lonich*, 23 F.4th 881, 893 (9th Cir. 2022); *United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010); *United States v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008); *United States v. Gregory*, 322 F.3d 1157, 1161-62, 1162 n.3 (9th Cir. 2003); *United States v. Lam*, 251 F.3d 852, 856 (9th Cir. 2001).

[16] *See Barker*, 407 U.S. at 533 ("It is clear that the length of delay between arrest and trial — well over five years — was extraordinary.").

[17] *See, e.g.*, *Rutherford v. State*, 486 P.2d 946, 951-52 (Alaska 1971); *Tarnef v. State*, 492 P.2d 109, 112-13 (Alaska 1971); *Nickerson v. State*, 492 P.2d 118, 120 (Alaska 1971); *Glasgow v. State*, 469 P.2d 682, 688-89 (Alaska 1970).

[18] *Rutherford*, 486 P.2d at 952 n.15; *Glasgow*, 469 P.2d at 688-89, 688 n.9.

[19] *Glasgow*, 469 P.2d at 688-89; *Rutherford*, 486 P.2d at 948; *State v. Mardock*, 490 P.2d 1223, 1226 (Alaska 1971). *See also Tarnef*, 492 P.2d at 112 ("It is not without significance that in each case where we have attached a presumption of prejudice from a delay in trial, that delay has exceeded fourteen months."); *Nickerson*, 492 P.2d at 120 ("In the three cases where we have attached a presumption of prejudice . . . the delay exceeded fourteen months.").

[20] *Nickerson*, 492 P.2d at 120 ("We hold that in [delays of less than eight months] we will not presume prejudice from the length of the delay. We will require the defendant to demonstrate prejudice in order to prevail.").

But this Court adopted the *Barker* test in *State v. Mouser*.[21] And as various commentators have explained, deducting the time attributable to the defendant for purposes of this initial threshold inquiry is inconsistent with the *Barker* test, which treats the reason for the delay as a separate factor to be considered if (and only if) the initial threshold under the first factor is met.[22] For example, in his treatise on criminal procedure, Professor LaFave has explained:

> Some lower courts apply the first *Barker* factor "not simply by adding together the number of days between accusation and trial but rather by deducting from this total pretrial period the number of days' delay caused by, or attributable to, either the defense or circumstances otherwise beyond the prosecution's control." This is incorrect, for such matters are to be considered under the second and third factors.[23]

Since our adoption of the *Barker* test in 1991, Alaska courts have not explicitly rejected the prior approach of considering the reason for the delay as part of the initial threshold inquiry, but both this Court in *State v. Mouser* and the supreme court in *State v. Wright* calculated the first *Barker* factor without considering the reason for the delay.[24] We recognize that our Court has, in later decisions, continued to use the pre-*Mouser* accounting method in evaluating length of delay.[25] But we have done so

---

[21] *State v. Mouser*, 806 P.2d 330, 340 (Alaska App. 1991); *see also State v. Wright*, 404 P.3d 166, 178 (Alaska 2017) (acknowledging adoption of the *Barker* test).

[22] *See, e.g.*, 5 Wayne R. LaFave et al., *Criminal Procedure* §18.2(b), at 130-32 (4th ed. 2015); *State v. Serros*, 366 P.3d 1121, 1131 (N.M. 2015) (holding that the parties' fault in causing the delay is irrelevant to the analysis of the first *Barker* factor).

[23] LaFave, *Criminal Procedure* §18.2(b), at 132 (citation omitted).

[24] *See Mouser*, 860 P.2d at 336, 339-41; *Wright*, 404 P.3d at 178.

[25] *See, e.g.*, *Alvarez v. Ketchikan Gateway Borough*, 91 P.3d 289, 294-95 (Alaska App. 2004); *Davis v. State*, 133 P.3d 719, 725 (Alaska App. 2006); *Tix v. State*, 2011 WL 2437680, at *4 (Alaska App. June 15, 2011) (unpublished); *Sage v. State*, 2002 WL 1150722, at *2 (Alaska App. May 29, 2002) (unpublished).

without acknowledging the obvious tension with the *Barker* test, which reserves consideration of the reason for delay until the initial threshold inquiry has been met. In order to hew to our adoption of *Barker*, we will not rely on this alternative method of accounting in this or future cases.

Here, the total length of delay was more than sufficient to trigger an analysis of the *Barker* factors. We accordingly conclude that the superior court should have engaged in the "difficult and sensitive balancing process" required by *Barker* — considering the length of delay, the reason for delay, the defendant's assertion of their speedy trial right, and prejudice to the defendant.[26]

*Hernandez adequately preserved his constitutional speedy trial claims*

The State argues that Hernandez did not preserve his constitutional speedy trial claims in the trial court proceedings because none of his attorneys ever raised these claims on his behalf. But the State's argument does not adequately consider the record in this case (which demonstrates that Hernandez himself raised this claim and obtained a ruling on it), and it ignores the reality that defendants and defense attorneys are not always aligned on speedy trial issues.

As a general matter, to preserve an issue for appeal, the issue must have been presented to and ruled on by the trial court.[27] This requirement is a prudential

---

[26] *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972). *See also Wright*, 404 P.3d at 178 (noting that "[n]o one of these factors is a necessary or sufficient condition to finding a speedy trial violation. Rather, the factors are related and must be considered together with other relevant circumstances." (citations omitted)); *Doggett v. United States*, 505 U.S. 647, 651-52 (1992) ("The first [*Barker* factor] is actually a double enquiry. Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay . . . . [T]he court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." (citations omitted)).

[27] *See Hollstein v. State*, 175 P.3d 1288, 1290 (Alaska App. 2008) ("[A] litigant who

gatekeeping doctrine adopted by the courts to serve important judicial policies, including: ensuring the primacy of the trial court proceedings, creating a reviewable trial court ruling, creating a sufficient factual record so that appellate courts are not deciding issues of law in a factual vacuum, affording the trial court the opportunity to correct an alleged error, providing the opposing party an opportunity to respond, and restricting the ability to attack the trial court's decision under novel theories.[28]

Here, the record shows that, although none of Hernandez's attorneys raised any speedy trial claims, Hernandez himself consistently claimed that his constitutional speedy trial rights were being violated. The first time Hernandez raised speedy trial concerns in open court was approximately two years into the case, after Hernandez had served around twenty-two months in jail.[29] On July 9, 2014, Hernandez

---

wishes to raise an issue on appeal must show that the issue was adequately preserved in the lower court — which means not only that the litigant presented the issue to the lower court, but also that the lower court *ruled on that issue*."); *see also Ivy v. Calais Co., Inc.*, 397 P.3d 267, 275 (Alaska 2017) ("An argument is ordinarily not preserved for appeal if it was not raised below."); *Johnson v. State*, 328 P.3d 77, 82 (Alaska 2014) ("Typically, a litigant or defendant must raise an objection in the trial court in order to preserve that argument for appeal."); *Pierce v. State*, 261 P.3d 428, 433 (Alaska App. 2011) ("[B]efore a litigant can invoke the authority of an appellate court to reverse or vacate a trial court's decision, the litigant must demonstrate that they gave the trial judge reasonable notice of their request or objection, and gave the judge a reasonable opportunity to respond to that request or objection."); *Bryant v. State*, 115 P.3d 1249, 1258 (Alaska App. 2005) ("Normally, an appellant may only appeal issues on which he has obtained an adverse ruling from the trial court."); *Mahan v. State*, 51 P.3d 962, 966 (Alaska App. 2002) ("To preserve an issue for appeal, an appellant must obtain an adverse ruling."); 7 Wayne R. LaFave et al., *Criminal Procedure* §27.5(c), at 98-102 (4th ed. 2015).

[28]  *Johnson*, 328 P.3d at 82; *Alexander v. State*, 611 P.2d 469, 478 (Alaska 1980); *Pierce*, 261 P.3d at 433.

[29]  During this time, Hernandez was "viciously assaulted by several other inmates to the point where he spent a few days in a coma." He continued to have "lingering medical issues" from the assault. On appeal, Hernandez's attorney argues that this assault constitutes prejudice for purposes of the fourth *Barker* factor, and the attorney also suggests that the assault may have been the cause of Hernandez's later obstreperous behavior in

requested a representation hearing because he wanted to be appointed co-counsel. As part of that request, Hernandez told the court that he had asked his lawyers repeatedly to raise speedy trial claims, but none of them ever did so. After this, Hernandez continued to personally assert his right to a speedy trial by objecting to continuances, making oral motions to dismiss, and filing or attempting to file written assertions of this claim. And on at least five occasions, the trial court directly ruled on Hernandez's assertion that his constitutional right to a speedy trial had been violated.

The first ruling occurred on July 16, 2014, in the context of the *ex parte* representation hearing that Hernandez had requested. At the representation hearing, Hernandez discussed the fact that he had had three different attorneys on the case, that all of his attorneys had asked for continuances over his objection, and that none of his attorneys had demanded a speedy trial for him, even though Hernandez repeatedly brought up the issue. In response, Hernandez's attorney pointed to the "voluminous" discovery in Hernandez's case and the fact that the defense had yet to start an investigation because it was still trying to get through the discovery. The attorney also blamed his workload and repeatedly asserted that his office was "short-staffed." The trial court ruled, "I find that there's understandable delay given the fact that this has gone from one attorney to another and now to Mr. Corrigan who has got his own heavy trial schedule." The trial court also denied Hernandez's request to be appointed co-counsel.[30]

The second ruling occurred approximately a month later, on August 29, 2014, during a second *ex parte* representation hearing. At the hearing, Hernandez gave the court a *pro per* letter in which he complained about the delay that had occurred in

court.

[30] Hernandez's appointed attorney, who was at the Office of Public Advocacy, told the court that the office did not permit hybrid representation and considered it against their "charter." *See Ortberg v. State*, 751 P.2d 1368, 1374-76 (Alaska App. 1988).

his case and demanded that his constitutional speedy trial right be protected. (This letter is part of the record on appeal.) Hernandez objected to the continuance requested by his attorney, and he pointed out that his attorney had not filed any motions related to the speedy trial issue. In response, the trial court noted that it was monitoring Alaska Criminal Rule 45 (the statutory speedy trial clock) and Hernandez's scheduled trial date was within his Rule 45 time. Hernandez argued (correctly) that "Rule 45 is not determinative upon my [constitutional] speedy trial rights," citing to *State v. Mouser*.[31] In response, the court stated, "It is in my court." The following exchange then took place:

> *Court*: That's my ruling. You can appeal it if you want to, but this is my ruling.
>
> *Hernandez*: I'm putting this Court on notice that I'm preserving your denial.
>
> *Court*: I just told you, you are.
>
> *Hernandez*: Okay.
>
> *Court*: It's preserved for appeal.

During the next three years, Hernandez continued to raise concerns about his speedy trial rights in open court. However, the next judicial ruling did not occur until August 2, 2017, during another *ex parte* representation hearing. At this point, Hernandez had been incarcerated for six years and he was on his fourth attorney. After complaining about his attorneys' inaction and failure to raise speedy trial concerns, Hernandez stated that he was making his own "motion to dismiss for violating my . . . speedy trial clause with prejudice" and cited *Barker v. Wingo*. The court replied, "Denied." Hernandez told the court that he was "putting this Court on notice, I'm

---

[31]   *State v. Mouser*, 806 P.2d 330, 339 n.6 (Alaska App. 1991) ("The speedy trial rule, however, is also not determinative of the constitutional right to speedy trial. Although meant to address the same concerns as the constitutional right to speedy trial, Criminal Rule 45 was not intended as a procedural or substantive embodiment of that constitutional right.").

preserving your denial of a motion for dismissal for denial for speedy trial for appeal." The trial court responded, "So noted."

Three months later, during another *ex parte* representation hearing held on November 15, 2017, Hernandez again moved the court to dismiss his case for speedy trial violations. The court replied, "Denied."

Lastly, on November 15, 2018, shortly before jury selection, at a time when the prosecutor was present in the courtroom, Hernandez demanded that all charges be dismissed "for violation of my speedy trial clause." The court replied, "Denied."

The dissent argues that this record is insufficient to preserve Hernandez's constitutional speedy trial claims for appeal. The dissent points out that the court's rulings were all summary in nature and many of them were in *ex parte* representation hearings where the prosecutor was not present.

The dissent recognizes that, although there is no constitutional right to hybrid representation, trial courts retain the discretion to rule on a *pro se* motion even if the person is represented by counsel.[32] The dissent argues, however, that such discretion should be used "sparingly." We agree that, as a general matter, this discretion should be used "sparingly." But it is not clear what else Hernandez could have done to raise his constitutional speedy trial concerns. Hernandez requested, but was denied, co-counsel status, and the trial court found that he was not capable of representing himself for a variety of reasons.

The dissent's position appears to be that defendants like Hernandez are not entitled to raise speedy trial concerns unless their attorney agrees to raise it for them. But this position relies on the incorrect assumption that defendants and defense attorneys are always aligned on speedy trial issues. As the Missouri Supreme Court has observed:

---

[32] *See Ortberg*, 751 P.2d at 1375.

> [T]he right to a speedy trial depends, in part, on circumstances that are uniquely experienced by the defendant. . . . Although defense counsel may understand that pretrial incarceration is a vexing condition, the prejudice to the defendant that flows from this condition is neither experienced nor directly shared by defense counsel. A defendant, thus, has a reason, not necessarily shared by counsel, to want trial to proceed as expeditiously as possible.[33]

Moreover, defense attorneys — particularly, publicly appointed attorneys — are often burdened with other cases and other obligations unrelated to the defense of the defendant.[34] The differing burdens and loyalties can create tensions between the interests of the defendant and the interests of their attorney, which can result in appointed defense counsel declining to raise speedy trial issues, despite the repeated request of the defendant. For this reason, a number of courts — both federal and state — have held that the constitutional right to a speedy trial can be invoked *pro se* by a represented defendant, regardless of whether the trial court actually rules on the *pro se* motion.[35]

---

[33]  *State ex rel. McKee v. Riley*, 240 S.W.3d 720, 728 (Mo. 2007).

[34]  *Id.*

[35]  *See, e.g.*, *United States v. Tigano,* 880 F.3d 602, 618 (2d Cir. 2018) (holding that in the context of a speedy trial action, the defendant's assertion of the constitutional right to a speedy trial preserves the claim for appeal even though ignored or contravened to the defense attorney); *United States v. Oriedo*, 498 F.3d 593, 596 (7th Cir. 2007) (rejecting rigid forfeiture rules in the context of the right to a speedy trial and holding that *Barker*'s balancing of the defendant's assertion of the right is the better approach); *Riley*, 240 S.W.3d at 729 (holding that "a represented defendant may assert his constitutional right to a speedy trial through a *pro se* motion"); *State v. Serros*, 366 P.3d 1121, 1143 (N.M. 2015) (holding that a defendant's assertion of their right to a speedy trial, even if ignored or contravened by counsel, is a relevant fact in determining the reason for the delay); *Watson v. State*, 155 N.E.3d 608, 619 (Ind. 2020) (noting that although defendant was represented by counsel when he personally asserted his right to a speedy trial, these assertions put the government on notice that the defendant wanted to be tried).

However, we need not determine whether the same would be true under Alaska law because the record shows that, in this case, the trial court *did* rule on Hernandez's *pro se* speedy trial motions. Thus, this case is similar to other cases in which we have held that a criminal defendant preserved a claim that was not adopted by their attorney by obtaining a ruling on the claim from the trial judge.[36] Furthermore, Hernandez has satisfied the basic requirements of the preservation doctrine — affording the trial court the opportunity to correct an alleged error, providing the opposing party an opportunity to respond, and restricting the ability to attack the trial court's decision under novel theories. As we have explained, Hernandez personally asserted his right to a speedy trial in the presence of the prosecutor on many occasions throughout the trial court proceedings; he specifically cited to *Barker* when arguing that Rule 45 was not dispositive of his speedy trial claims; and he obtained a ruling from the trial court at least five separate times.[37] We accordingly conclude that Hernandez's constitutional speedy trial claims were adequately preserved for purposes of this appeal.

> *There are factual questions that must be resolved in order to properly evaluate Hernandez's speedy trial claims*

In the current case, the State argues that all but two and a half months of the seven-year delay is attributable to Hernandez. The State appears to have reached this conclusion because Hernandez's court-appointed attorneys either requested (or at least acquiesced in) the vast majority of the continuances. But this ignores the fact that

---

[36] *Glasgow v. State*, 355 P.3d 597, 600 (Alaska App. 2015) (claim preserved by defendant's *pro se* pleading when the pleading contained an offer of proof and the claim was ruled upon by the court); *Abruska v. State*, 705 P.2d 1261, 1271-72 (Alaska App. 1985) (untimely claims made by the defendant not forfeited where the trial judge ruled on the merits of the claims).

[37] Although some of these rulings occurred in *ex parte* proceedings, Hernandez's repeated assertions of his constitutional right to speedy trial in open court put the State on notice that he wanted to be tried. *See Watson*, 155 N.E.3d at 619.

many of the continuance requests were over the express objection of Hernandez himself, who repeatedly claimed that these continuances were not for his benefit.[38] Moreover, some of the continuances were clearly not for Hernandez's benefit and were instead the result of "understaffing" in the public defense agency.[39]

Significantly, the dissent does not adopt the State's claim that only two and a half months of the delay is attributable to the State. Instead, the dissent concludes that "[o]f the seven years and two months that it took to get the case to trial, it appears that perhaps two and one-half years of delay, at best, are attributable to the State" — a time period that the dissent further concludes "would not generally be viewed as a speedy trial violation in a case of this complexity." (The dissent does not clearly explain how it arrives at its calculation.)

In our view, the fact that the dissent and the State disagree about the amount of delay that should be attributable to the State demonstrates that resolution of the speedy trial claims on the current record would be premature. Although it may "appear" to the dissent that the majority of the delay was caused by Hernandez, there are still issues to resolve regarding the underlying reasons for the delay, Hernandez's assertion of his right to a speedy trial, and the prejudice Hernandez suffered as a result

---

[38] *See Camacho v. Superior Court*, 534 P.3d 484, 502 (Cal. 2023) (noting that a court may consider if counsel waives time against defendant's objection).

[39] *See Vermont v. Brillon*, 556 U.S. 81, 94 (2009) (holding that a defense counsel's actions can generally be attributed to the defendant but recognizing that "[d]elay resulting from a systemic 'breakdown in the public defender system,'" could be attributable to the State (quoting *State v. Brillon*, 955 A.2d 1108, 1111 (Vt. 2008))); *see also State v. Ochoa*, 406 P.3d 505, 515 (N.M. 2017) (holding that delay caused by agency furlough was not attributable to the defendant but was also not attributable to the government because there had been no systemic breakdown in the public defender system).

of the delay.[40] Accordingly, we remand this case to the superior court for further litigation under the *Barker* balancing test.[41]

*Conclusion*

This matter is REMANDED to the superior court for further proceedings consistent with this opinion. The superior court shall transmit its findings of fact and conclusions of law to this Court on or before April 9, 2024. This deadline may be extended for good cause with notice to this Court. We retain jurisdiction.

---

[40] The State notes that the federal district court rejected Hernandez's federal constitutional speedy trial claim on the merits and it argues that we should adopt those same findings on appeal. But the record is clear that that the federal district court primarily rejected Hernandez's federal constitutional speedy trial claim on federal abstention grounds because Hernandez had not exhausted his state remedies. Moreover, the Ninth Circuit affirmed the federal district court solely on those procedural grounds and did not affirm the district court's alternative ruling on the merits.

[41] We note that, although the trial judge has retired, the judge continues to sit on criminal cases on a *pro tem* basis and the judge may therefore be available to handle this case on remand. But even if a new judge must be assigned, we still believe that a remand for further proceedings is appropriate given the length of delay at issue here (over seven years) and the case-specific, *ad hoc* nature of the *Barker* balancing test.

Judge HARBISON, concurring.

I write separately to explain why I disagree with the State's assertion that whenever one of Hernandez's attorneys requested or acquiesced in a continuance, the reason for the delay is not chargeable to the State. In my view, this assertion ignores the complexities of both the law and the record in this case.

In *Barker v. Wingo*, the United States Supreme Court explained that, in evaluating a constitutional speedy trial claim, courts must consider "whether the government or the criminal defendant is more to blame for that delay" and will assign different weights to different reasons.[1]

If the government deliberately delays trial to hamper the defense, for instance, that effort will weigh heavily against the prosecution.[2] And while "more neutral reason[s] such as negligence or overcrowded courts" weigh less heavily, they "nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."[3] As the Ninth Circuit has noted:

> A state government's allocation of resources plays a major role in creating congested dockets, and it is unfair to require defendants to bear the entire burden that results from the government's fiscal decisions. There must be a point at which delay due to a congested docket becomes so unacceptable that by itself it violates the right to a speedy

---

[1] *Barker v. Wingo*, 407 U.S. 514, 531 (1972). *See also Doggett v. United States*, 505 U.S. 647, 651 (1992) (noting that part of the inquiry is "whether the government or the criminal defendant is more to blame for that delay"); *United States v. Brown*, 169 F.3d 344, 349 (6th Cir. 1999) (noting that, because "the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner . . . the burden is on the prosecution to explain the cause of the pretrial delay" (quoting *United States v. Graham*, 128 F.3d 372, 374 (6th Cir. 1997))).

[2] *Barker*, 407 U.S. at 531.

[3] *Id.*

trial. That point comes sooner when a defendant is incarcerated awaiting trial.[4]

By contrast, a good-faith, reasonable justification for the delay, such as a missing witness, or a meritorious interlocutory appeal, will weigh less heavily against the government or not weigh against the government at all.[5] Lastly, "if delay is attributable to the defendant, then his waiver [of his right to a speedy trial] may be given effect under standard waiver doctrine," in accord with the reality that defendants may have incentives to employ delay as a defense tactic. [6]

In the present case, Hernandez was incarcerated from the time he was arrested and formally charged in September 2011 through the time he was brought to trial over seven years later.[7] The record reflects that Hernandez had five different attorneys throughout the proceedings, and these attorneys made numerous requests for continuances.

---

[4] *Tucker v. Wolff*, 581 F.2d 235, 237 (9th Cir. 1978).

[5] *Barker*, 407 U.S. at 531 (noting "a valid reason, such as a missing witness, should serve to justify appropriate delay"); *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986) (noting "an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay").

[6] *Barker*, 407 U.S. at 529. *Cf. Loud Hawk*, 474 U.S. at 316 (noting that a defendant whose trial was delayed by his interlocutory appeal "normally should not be able . . . to reap the reward of dismissal for failure to receive a speedy trial").

[7] I note that this case went to trial prior to the pandemic and does not involve delays caused by the pandemic. Because of sentencing and other post-verdict delays, notice of appeal was not filed in this case until February 24, 2020. Because of briefing delays by both the Public Defender Agency and the State, the appellate briefing was not completed until October 5, 2022. Oral argument was conducted on November 16, 2022 and the case was taken under advisement by this Court at that time.

In my view, courts should distinguish between those delays Hernandez did not object to and those to which his counsel assented on his behalf and against his clear wishes.[8]

In *Vermont v. Brillon*, the United States Supreme Court held that delays sought by the defendant's counsel weigh against the defendant's claim of a speedy trial violation.[9] This rule flows from the ordinary principle that an "attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation," such that the client must assume the consequences of the attorney's delay.[10]

Applying this principle in *Brillon*, the United States Supreme Court reversed a state court's decision that pretrial delay should be charged against the government when the blame for the delay lay with court-appointed counsel for an indigent criminal defendant.[11] The Court explained that "assigned counsel generally are not state actors for purposes of a speedy-trial claim."[12] Thus, counsel's "inability or unwillingness . . . to move the case forward" may not be attributed to the State simply because the defendant is represented by public counsel.[13] The court noted that the analysis might be different if, as Brillon had argued, the delay was shown to result from

---

[8]   *Cf. Barker*, 407 U.S. at 529 (noting that the third *Barker* factor permits a trial court "to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client").

[9]   *Vermont v. Brillon*, 556 U.S. 81, 85, 90-91 (2009).

[10]   *Id.* at 90 (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)).

[11]   *Id.* at 92.

[12]   *Id.*

[13]   *Id.* at 92 (quoting *State v. Brillon*, 955 A.2d 1108, 1121 (Vt. 2008)).

"a systemic 'breakdown in the public defender system.'"[14] But, in that case, the Vermont Supreme Court had "made no determination, and nothing in the record suggest[ed], that institutional problems caused any part of the delay in Brillon's case."[15]

I do not construe *Brillon* to mean that delay caused by defense counsel may be charged against the State *only* when there is a systemic breakdown of the public defender system and under no other circumstances. *Brillon* addressed a hypothetical systemic breakdown of the public defender system because that was an argument presented in that case. I agree with the California and New Mexico Supreme Courts that *Brillon* does not prevent a court from taking into account such matters as whether a defense attorney's requested continuance was contrary to the defendant's express objection[16] or whether the court and the State failed to fulfill their obligation to monitor and move a case forward during a period of extraordinary delay.[17]

On remand, the trial court should examine the record in its entirety and determine which party, if either, must be assigned blame for the various continuances, as well as the weight to be assigned to the delay. And in conducting this examination, the court should be mindful of the complicated record in this case.

For example, shortly after Hernandez's first court appearance, the trial court issued a lengthy and robust pretrial order, and it placed Hernandez's case on the trailing trial calendar for the week of January 3, 2012. The pretrial order required

---

[14] *Id.* at 94 (quoting *Brillon*, 955 A.2d at 1111).

[15] *Id.*

[16] *Camacho v. Superior Court*, 534 P.3d 484, 502 (Cal. 2023). Indeed, Alaska Criminal Rule 45 indicates that the court should consider whether the defendant has agreed to a continuance requested by their attorney when evaluating speedy trial claims. Alaska R. Crim. P. 45(d)(2).

[17] *State v. Serros*, 366 P.3d 1121, 1135 (N.M. 2015).

discovery to be exchanged by November 10, 2011 and all motions to be filed by December 20, 2011. The order stated, *inter alia*:

> All continuances of trial at the request of the defense must be accompanied by a written waiver signed by the defendant.
>
> . . . .
>
> No extension of time for any deadline established in this Order or at a pretrial conference, and no continuance for any scheduled court event except pretrial conferences, including pretrial conferences, evidentiary hearings, status hearings, trials, and sentencing, shall be granted except upon written motion.
>
> . . . .
>
> No deviations from this Order shall be granted except upon written motion for good cause shown.

Despite the strong language of this order, Hernandez's trial was postponed without a written waiver signed by Hernandez and without the filing of a written motion dozens of times, resulting in the trial being conducted approximately seven years after the original trial date. And on more than one occasion, a defendant who had been waiting less time for their trial than Hernandez was nevertheless allowed to go to trial before Hernandez, suggesting that the prosecutor and the court were not complying with their "affirmative constitutional obligation to try the defendant in a timely manner."[18]

Similarly, although the pretrial order required all motions to be filed within sixty days of Hernandez's arraignment (*i.e.*, by December 20, 2011), the first substantive defense motions were not filed until over one year after the arraignment. After this, the parties continued filing various substantive motions until the very eve of trial.

---

[18] *United States v. Brown*, 169 F.3d 344, 349 (6th Cir. 1999). *Cf. Tucker v. Wolff*, 581 F.2d 235, 237 (9th Cir. 1978) (noting that the government's claim that the delay was caused by congested courts was undermined by the fact that defendants who were arrested later than the appellant received their trials earlier).

Additionally, although the pretrial order required discovery to be completed by November 10, 2011, it was not until nearly two years later, on October 30, 2013, that the prosecutor announced that the discovery was "finally . . . complete." Even after the prosecutor made this assertion, Hernandez's defense attorneys repeatedly claimed that there were ongoing discovery issues. In fact, shortly before jury selection for Hernandez's trial commenced, Hernandez's defense attorney filed a forty-eight page motion to compel discovery.

On appeal, the State claims that Hernandez was an uncooperative and manipulative litigant who attempted, through frivolous *pro se* filings, noncompliance with court orders, and decorum breaches, to delay the trial date. While the record supports this claim, the record does not establish the extent to which Hernandez actually succeeded in these efforts. The trial judge assigned to Hernandez's case was both skilled and experienced, and the record suggests that the judge often was able to control Hernandez's behavior or to prevent the behavior from delaying the trial.

During the remand proceedings, the trial court should carefully consider the record in this case. The court should determine what caused the various trial delays and which party, if either, should be charged with the delay and how much weight should be assigned to the various reasons for the delay.

Judge ALLARD, concurring.

I join the majority opinion in concluding that Hernandez adequately preserved his constitutional speedy trial claims and that a remand for evaluation of the *Barker* factors is therefore required. I write separately to address an argument made by the dissent with regards to the preservation issue.

In *Barker v. Wingo*, the United States Supreme Court made clear that it was rejecting "the rule that a defendant who fails to demand a speedy trial forever waives his right."[1] The Court asserted that "the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right."[2]

Based on this language, a number of courts have held that rigid forfeiture or preservation rules have no place in the speedy trial context, and that represented defendants should therefore be allowed to raise their constitutional speedy trial rights on a *pro se* basis even if their appointed attorney refuses to do so.[3] In *United States v.*

---

[1]    *Barker v. Wingo*, 407 U.S. 514, 528 (1972).

[2]    *Id.* But, as the Court further noted, "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532.

[3]    *See, e.g.*, *United States v. Tigano*, 880 F.3d 602, 617-18 (2d Cir. 2018) (holding that "[f]ormal procedural requirements are out of place in this context" and "a defendant may waive his statutory right to a speedy trial by failing to formally raise it, but not his constitutional right"); *United States v. Oriedo*, 498 F.3d 593, 596 (7th Cir. 2007) ("[T]he right is ill-suited to rigid forfeiture rules."); *Rowsey v. State*, 188 So.3d 486, 494 (Miss. 2015) (overruling prior cases that required the defendant to obtain a ruling on their speedy trial motion in order to preserve their rights and holding that such cases "contravene" the United States Supreme Court's holding in *Barker* and were in conflict with the court's own precedent); *State ex rel. McKee v. Riley*, 240 S.W.3d 720, 727-29 (Mo. 2007) (holding that "a represented defendant may assert his constitutional right to a speedy trial through a *pro se* motion"); *State v. Serros*, 366 P.3d 1121, 1135-36, 1143 (N.M. 2015) (holding that a defendant's assertion of their right to a speedy trial, even if ignored or contravened by counsel, is a relevant fact in determining the reason for the delay); *Watson v. State*, 155 N.E.3d 608, 619 (Ind. 2020) (noting that although defendant was represented by counsel when he personally asserted his right to a speedy trial, these

---

*Tigano*, for example, the Second Circuit held that "a defendant's assertion of his own right to a speedy trial — even though ignored or contravened by his counsel — is the relevant fact for purposes of Sixth Amendment analysis."[4] This is because, as the court observed, "the right to a speedy trial belongs to the defendant, not to defendant's counsel."[5]

The dissent largely ignores this case law, and instead asserts that the "correct" approach is to treat a constitutional speedy trial claim as preserved only if the defense attorney formally raises it.[6] But this approach ignores the fact that speedy trial issues can be a source of conflict between defendants and their attorneys, particularly publicly appointed attorneys who may be struggling with limited resources, high caseloads, and chronic understaffing.[7] Moreover, as Professor LaFave notes, "Failure

---

assertions put the government on notice that the defendant wanted to be tried); *see also United States v. Hall*, 181 F.3d 1057, 1060-61 (9th Cir. 1999) (holding in the statutory speedy trial context, that "where defense counsel does not assert his client's right to a speedy trial, a defendant may alert the court directly of his desire not to waive those rights"); *United States v. Lloyd*, 125 F.3d 1263, 1267-71 (9th Cir. 1997) (treating defendant's own pretrial assertions of his statutory speedy trial rights as adequate to preserve those rights on appeal even though the defendant was represented by counsel who failed to raise the issue).

[4]  *Tigano*, 880 F.3d at 618.

[5]  *Id.*

[6]  In support of this point, the dissent cites to a single concurrence written by a justice of the Mississippi Supreme Court. *See Rowsey*, 188 So.3d at 505-06 (Pierce, J., concurring in result only). The dissent does not acknowledge that a majority of that court rejected the concurrence's approach as contravening both *Barker* and Mississippi law. *Id.* at 494 (majority opinion) (rejecting the notion that a defendant can waive their right to a speedy trial by failing to obtain a ruling on their motion for a speedy trial in the trial court); *see also id.* at 503-04 (Coleman, J., concurring) (asserting that plain error review of speedy trial claims should be reserved for situations where defendant never raises the issue at all).

[7]  *See Riley*, 240 S.W.3d at 727-28 ("The constitutional right to speedy trial is unique in that its assertion, under some circumstances, can place the defendant in a conflicting position with defense counsel."); *see also Vermont v. Brillon*, 556 U.S. 81, 94 (2009)

of defense counsel to raise a speedy trial objection could in some circumstances constitute ineffective assistance of counsel, which perhaps explains why appellate courts not infrequently assess speedy trial claims even when there was no timely motion for dismissal below."[8]

As the dissent otherwise recognizes, an indigent defendant's complaints about their appointed counsel constitute a well-established exception to the general rule that trial courts have the discretion to reject *pro se* pleadings that are filed by a represented defendant.[9] The law is clear that the trial judge has a duty of inquiry when an indigent defendant makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel appointed.[10] Because constitutional speedy trial concerns are often intertwined with representational issues, I believe that a similar duty of inquiry applies to a represented defendant's *pro se* invocations of their constitutional

(holding that, as a general rule, "delays caused by defense counsel are properly attributed to the defendant" but noting an exception to the general rule for "[d]elay resulting from a systemic 'breakdown in the public defender system,'" which can be charged to the State).

[8] 5 Wayne R. LaFave et al., *Criminal Procedure* § 18.1(d), at 125 (4th ed. 2015).

[9] *See, e.g.*, *Sheppard v. State*, 17 So.3d 275, 286-87 (Fla. 2009); *State v. Stuckey*, 508 S.E.2d 564, 564-65 (S.C. 1998); *State v. Wareham*, 143 P.3d 302, 309 (Utah App. 2006); *People v. Serio*, 830 N.E.2d 749, 757 (Ill. App. 2005).

[10] *See, e.g.*, *Martel v. Clair*, 565 U.S. 648, 664 (2012) (stating that "[a]s all Circuits agree, courts cannot properly resolve substitution motions without probing why a defendant wants a new lawyer" and noting that "an on-the-record inquiry into the defendant's allegations 'permit[s] meaningful appellate review' of a trial court's exercise of discretion" (citations omitted)); *United States v. Adelzo-Gonzalez*, 268 F.3d 772, 777 (9th Cir. 2001) ("Before ruling on a motion to substitute counsel due to an irreconcilable conflict, a [trial] court must conduct 'such necessary inquiry as might ease the defendant's dissatisfaction, distrust, and concern.'" (quoting *United States v. Garcia*, 924 F.2d 925, 926 (9th Cir. 1991))); *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990) ("It is hornbook law that '[w]hen an indigent defendant makes a timely and good faith motion requesting that appointed counsel be discharged and new counsel appointed, the trial court clearly has a responsibility to determine the reasons for defendant's dissatisfaction.'" (citations omitted)).

speedy trial rights when those invocations are made in good faith and the threshold for presumptive prejudice under the first *Barker* factor has long since been met.[11]

---

[11] *Cf. Riley*, 240 S.W.3d at 732-33 (Price, J., concurring) (disagreeing with the majority opinion that trial courts should affirmatively rule on *pro se* speedy trial motions by represented defendants but agreeing that such motions should not be ignored when they "indicate the attorney-client relationship has failed," and that in such situations "the trial court is obligated to immediately investigate and, if necessary, remedy the situation").

Judge TERRELL, dissenting.

In his appeal of his conviction of multiple counts of first-degree sexual abuse of a minor, in a case where he was represented by counsel in the trial court, Ralph Hernandez claims that the time it took to bring his case to trial violated his constitutional rights to a speedy trial, as guaranteed by the Sixth Amendment to the United States Constitution and Alaska Constitution Article I, Section 11. None of his attorneys in the trial court asserted that Hernandez's constitutional speedy trial rights were violated, and his appellate counsel raises these claims for the first time on appeal. As the majority opinion recognizes, ordinarily that would mean that the speedy trial claims were not preserved in the trial court and hence are reviewable only under the plain error standard set out in Alaska Criminal Rule 47, as we have done in previous appeals raising speedy trial claims.[1] As I view the record, Hernandez cannot show plain error.

However, my colleagues conclude that the trial court addressed the merits of Hernandez's *pro se* invocations of his speedy trial rights and thereby preserved the constitutional speedy trial claims. I disagree and write separately to discuss (1) the relationship between a represented defendant's *pro se* assertions of his speedy trial rights, preservation of a constitutional speedy trial claim, and the third factor in the four-factor speedy trial test set out in *Barker v. Wingo*,[2] *i.e.*, the defendant's assertion of the right, (2) why the trial court's statements should not be viewed as rulings on Hernandez's speedy trial claims, (3) how unresolved factual disputes factor in to plain error analysis, and (4) why Hernandez fails to show plain error. I also address the more

---

[1] *See, e.g.*, *Tix v. State*, 2011 WL 2437680, at *4 (Alaska App. June 15, 2011) (unpublished); *Sage v. State*, 2002 WL 1150722, at *2 (Alaska App. May 29, 2002) (unpublished); *Azzarella v. State*, 1992 WL 12153187, at *2 (Alaska App. July 15, 1992) (unpublished). The Alaska Supreme Court has likewise applied plain error analysis to speedy trial claims. *Judd v. State*, 482 P.2d 273, 280 (Alaska 1971), *overruled on unrelated grounds, Charles v. State*, 326 P.3d 978 (Alaska 2014).

[2] *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

systemic ramifications of the majority's view that trial courts must address a represented defendant's *pro se* speedy trial motion whenever the length of time since arrest or charging is sufficient to trigger a speedy trial analysis if a speedy trial motion had been filed by counsel.

To begin, Alaska has long followed the rule that a "trial court is not required to allow a defendant who is represented by counsel to file his own motions."[3] That is, criminal defendants generally enjoy two mutually exclusive constitutional rights with respect to representation, representation by counsel or self-representation. Defendants do not have a constitutional right to hybrid representation, where a defendant has counsel but can still file his own motions.[4] Applying those principles, courts nationally have repeatedly recognized that a trial court is not required to entertain a *pro se* speedy trial motion brought by a represented criminal defendant.[5]

---

[3]   *Martin v. State*, 797 P.2d 1209, 1217 (Alaska App. 1990). There is one exception that courts have recognized to this rule — represented defendants may bring *pro se* motions challenging their representation. *See, e.g.*, *Sheppard v. State*, 17 So.3d 275, 282-87 (Fla. 2009); *People v. Stevenson*, 960 N.E.2d 739, 745 (Ill. App. 2011); *State v. Stuckey,* 508 S.E.2d 564, 564-65 (S.C. 1998); *State v. Wareham*, 143 P.3d 302, 309 (Utah App. 2006). The reason for this exception is simple. The attorney's authority to file motions stems from their status as the defendant's agent, and if only the attorney could file motions to terminate the relationship or challenge their own handling of their duties, then the defendant is potentially handicapped by a conflict of interest, being dependent on the very person whose actions he is challenging to take the necessary action to bring the matter before the court. Therefore, if the defendant in the course of asserting a speedy trial claim raises claims regarding representation that warrant further review of the defendant's representation, the court should review that, even if it declines to review the speedy trial claim.

[4]   *Thomas v. State*, 382 P.3d 1206, 1208 (Alaska App. 2016) (collecting cases).

[5]   *See, e.g.*, *United States v. Muhtorov*, 20 F.4th 558, 652 n.79 (10th Cir. 2021); *Gaston v. State*, 265 So.3d 387, 406-07 (Ala. Crim. App. 2018); *Monts v. Lessenberry*, 806 S.W.2d 379, 381 (Ark. 1991); *State v. Gibbs*, 758 A.2d 327, 347-48 (Conn. 2000); *Ferguson v. United States*, 977 A.2d 993, 999 (D.C. 2009); *Cornelius v. State*, 223 So.3d 398, 401 (Fla. App. 2017); *Watson v. State*, 155 N.E.3d 608, 619 (Ind. 2020); *State v. Nixon*, 222 So.3d 123, 133-34 (La. App. 2017); *People v. Rodriguez*, 741 N.E.2d 882, 884-85 (N.Y. App.

There are good reasons to give primacy to the decisions of counsel with respect to whether to bring a speedy trial claim.

First, though the constitutional right to a speedy trial is a right that a defendant personally possesses, it is not one of the four rights that the defendant has the sole authority to decide whether to exercise, *i.e.*, "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."[6]

Second, assessing whether asserting the right is in one's best interest in defending a case is complex and involves considerations that a person not trained in the law may be ill-equipped to discern and to properly balance.[7] My colleagues are right that some effects of trial delay are uniquely felt and understood by defendants, such as pretrial incarceration, but the defendant may not understand the legal considerations regarding assertion of the right. The right is "amorphous," and there is no fixed point or bright-line period by which delay in bringing a case to trial may be deemed to be a speedy trial violation.[8] Delay in bringing a case to trial may have defense-favoring effects that an incarcerated defendant may not readily perceive — loss of evidence, loss of witnesses, and faded memories of witnesses may significantly and sometimes fatally weaken the prosecution's case. Delay may be necessary to ensure that defense counsel has sufficient time to prepare to try the case, and defendants frequently fail to understand what is required to properly prepare a case for trial or the competing demands on the time of their attorneys.

---

2000); *State v. Williams*, 686 S.E.2d 493, 500-01 (N.C. 2009); *State v. Oliveira*, 127 A.3d 65, 76, 80 (R.I. 2015); *Cerf v. State*, 366 S.W.3d 778, 788 n.3 (Tex. App. 2012).

6  *Thomas v. United States*, 737 F.3d 1202, 1208 (8th Cir. 2013) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

7  *Id.*

8  *Barker v. Wingo*, 407 U.S. 514, 522 (1972).

Accordingly, the right to a speedy trial, like other constitutional rights, may be exercised or forfeited by counsel. Courts nonetheless retain discretion to allow a represented defendant to exercise the right via *pro se* motions but should utilize it sparingly.[9] Appellate courts should presume that a trial court did not permit the defendant to exercise the right *pro se* unless the record clearly indicates otherwise.[10]

The net result of the foregoing is that a speedy trial claim, *in toto*, is under ordinary preservation-of-claims principles only preserved for *de novo* appellate review, in the case of a represented defendant, if *counsel* asserts the claim in the trial court.

Nonetheless, the Supreme Court's discussion of the speedy trial right in *Barker v. Wingo* has caused some confusion among courts as to the applicability of ordinary preservation-of-claims rules and effect-of-representation rules to speedy trial claims. First, in considering the inherent nature of the right, the Court rejected the decisions of many appellate courts that had treated the right as explicitly or implicitly waived by failure of the defendant to demand a speedy trial in the trial court.[11] Second, in setting out a standard for assessing speedy trial claims, the Court said that one of the factors courts must consider is "the *defendant's* assertion of his right."[12] Some courts have viewed these aspects of *Barker* as holding that ordinary preservation rules are out of place with respect to speedy trial claims, and that represented defendants may effectively preserve speedy trial claims for appellate review by their own *pro se* filings or statements.[13]

---

[9]  *Johnson v. State*, 885 S.E.2d 725, 736-37 (Ga. 2023) (discussing this principle with respect to all types of claims raised in *pro se* motions filed by represented defendants).

[10]  *Id.*

[11]  *Barker*, 407 U.S. at 523-29.

[12]  *Id.* at 530 (emphasis added).

[13]  *See, e.g.*, *United States v. Tigano*, 880 F.3d 602, 618 (2d Cir. 2018); *United States v. Oriedo*, 498 F.3d 593, 596 & n.2 (7th Cir. 2007); *State ex rel. McKee v. Riley*, 240

But as other jurists have correctly recognized, the *Barker* Court did not "reject[] the notion that failure to raise a speedy-trial claim in the trial court and/or pursue the claim to a hearing before the trial court subjects the claim to plain-error review on appeal[,]" but rather only rejected the rigid demand-waiver rule that courts had applied in the 1960s.[14] The *Barker* Court stated that courts may "exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule."[15] And the reference to the *defendant*'s assertion of the right was a generic reference, that like many such references to "defendant," sometimes encompasses both defendant *and* their counsel.[16] The net result is that in the case of represented defendants, many courts recognize that counsel must raise the speedy trial claim in the trial court to preserve it for appellate review, and the defendant's personal assertions of the right can then be considered in evaluating the third *Barker* factor.[17]

---

S.W.3d 720, 728-29 (Mo. 2007).

[14] *Rowsey v. State*, 188 So.3d 486, 505-06 (Miss. 2015) (Pierce, J., concurring, joined by Waller, C.J., and Randolph, P.J.).

[15] *Barker*, 407 U.S. at 529.

[16] *See Davis v. State*, 133 P.3d 719, 724 & n.6 (Alaska App. 2006) (noting that "the Alaska court rules often use the term 'defendant' to mean, or at least to include, the defense attorney (unless the context indicates a narrower meaning)").

[17] This can be seen in cases where defendant's counsel raised a speedy trial claim in the trial court, and the reviewing appellate court then looked to the defendant's *pro se* assertions of his speedy trial rights in the trial court. *See, e.g.*, *United States v. Muhtorov*, 20 F.4th 558, 652 (10th Cir. 2021); *State v. Ambriz*, 880 S.E.2d 449, 472-73 (N.C. App. 2022). It can also be seen in the cases where the appellate court affirmed, without going into a full-blown speedy trial analysis, trial courts' decisions not to entertain a *pro se* speedy trial motion filed by a represented defendant. *See, e.g.*, *Monts v. Lessenberry*, 806 S.W.2d 379, 381-82 (Ark. 1991); *State v. Joseph*, 165 A.3d 241, 250-53 (Conn. App. 2017); *State v. Gibbs*, 758 A.2d 327, 347-48 (Conn. 2000); *Cornelius v. State*, 223 So.3d 398, 401-02 (Fla. Dist. App. 2017); *State v. Nixon*, 222 So.3d 123, 133-34 (La. App. 2017); *People v. Rodriguez*, 741 N.E.2d 882, 884-85 (N.Y. 2000); *State v. Williams*, 686 S.E.2d 493, 500-01 (N.C. 2009).

My colleagues conclude that the speedy trial issue is in any event preserved because the trial court supposedly addressed and ruled on several of Hernandez's *pro se* invocations of his speedy trial rights. I respectfully disagree that the trial court's statements amounted to merits rulings on his speedy trial claim.

The first statement occurred at an *ex parte* July 16, 2014 representation hearing, where Hernandez listed among his complaints the fact that none of his attorneys had demanded a speedy trial. The trial court replied, "I find that there is understandable delay." At a second *ex parte* representation hearing on August 29, 2014, Hernandez again expressed his desire for a speedy trial. He correctly pointed out that the court-rule-based speedy trial right in Alaska Criminal Rule 45 and the constitutional rights to a speedy trial are not co-extensive, such that compliance with Rule 45 does not invariably ensure compliance with the constitutional rights. The court disagreed and stated, "It's preserved for appeal." And the trial court on three separate occasions — *ex parte* hearings on August 2 and November 15, 2017, and a November 15, 2018 hearing — responded to Hernandez's requests to dismiss his case on speedy trial grounds with the one-word response, "denied."

Before analyzing those statements in greater detail, I first make the following general points about when a court's oral or written statements may amount to a ruling on a *pro se* motion made by a represented defendant. I recognize, as do my colleagues, that in some situations a simple word such as "denied" may amount to a merits ruling on a motion or request made *pro se* by a represented defendant. But those will tend to involve simple, direct requests where the preexisting record provides sufficient information for the court to decide the matter, typically procedural matters. Here, the issue raised *pro se* by the represented defendant involved a substantive legal claim requiring a multi-factor analysis and significant development of a factual record before the court could properly decide the issue. We should apply the presumption that the trial court did not allow the represented defendant to litigate the issue *pro se* and the

court's response was not a merits ruling, unless the record clearly indicates that the trial court addressed the merits.[18]

Here, the record does not clearly rebut that presumption. Indeed, viewing the trial court's statements against the larger procedural backdrop of the case highlights why the trial court's statements should not be viewed as merits rulings. The trial court routinely returned all of Hernandez's *pro se* filings to him with the response that it would not consider them because he was represented by counsel. Hernandez repeatedly sought self-representation or co-counsel status, and the trial court repeatedly and emphatically denied these requests. The trial court's exceptions to this rule were specific. At an August 13, 2014 pretrial conference, Hernandez told the court that at a July 9, 2014 hearing the court had allowed him to "speak *pro per*" when his lawyer was absent, to which the court replied, "[w]ell, that day I did." In the same exchange, the court told Hernandez that he could file motions challenging his representation and that the court would entertain them.[19]

Turning to an examination of the specific statements the majority relies on, the first statement, "I find there's understandable delay," has none of the hallmarks of a merits ruling on a speedy trial claim. Hernandez was not presenting a stand-alone speedy trial claim but rather discussed speedy trial as part of an ineffective assistance of counsel claim, the speedy trial analysis was not developed in any meaningful way, and the prosecutor did not have chance to respond because the hearing was *ex parte*. The court's off-hand statement was not a considered analysis of all the *Barker* speedy trial factors but rather was pertinent only to one factor. The court's statement was a merits ruling insofar as it addressed Hernandez's request for new counsel, but it was not a merits ruling as to a speedy trial claim. And the court's statement, uttered at a

---

[18] *See Johnson v. State*, 885 S.E.2d 725, 736-37 (Ga. 2023).

[19] As noted, motions challenging representation are a well-recognized exception to the no-*pro-se*-motions-by-represented-defendants general rule.

July 2014 hearing, was in no way a determination as to the speedy trial claim that Hernandez brings before us, *i.e.*, it could not analyze the effects of four additional years of time before his case was tried.

The court's statement at the August 2014 hearing, that Hernandez's claim was "preserved for appeal," is likewise unavailing. A trial court telling a litigant that a claim is preserved does not mean that the claim actually is preserved.[20] Also, the trial court's ruling, to the degree it actually made one, was premised on the erroneous view that complying with Criminal Rule 45 amounts to compliance with the constitutional right to a speedy trial, and did not address the constitutional speedy trial factors.

Finally, the other three statements, *i.e.*, the court's use of "denied" in response to Hernandez's orally asserted speedy trial claims, are properly viewed as a trial court denying the request to even *consider* his claims, because he was represented by counsel and the claims were repetitive. Put another way, the court's statements were intended to manage an extremely difficult litigant. They are consistent with the many other times that the trial court responded to Hernandez's various statements and demands at pretrial hearings and at trial with the word "denied."

The bottom line is that none of these statements, either individually or collectively, constituted rulings that preserved Hernandez's current speedy trial claims.

Because Hernandez's speedy trial claims were not properly preserved, they are only reviewable for plain error. Plain error analysis has a significant but often overlooked aspect relevant to speedy trial claims. While plain error is often equated with review of legal issues, plain error claims may often be intertwined with factual issues. Such factual issues almost invariably involve disputed facts where the trial court has not made factual findings (since the trial court usually would have made such findings if the court had addressed the legal claim). As federal courts have recognized, "[w]here the [legal] error the defendant asserts on appeal depends upon a factual finding

---

[20]   *See Williams v. State*, 214 P.3d 391, 393 (Alaska App. 2009).

the defendant neglected to ask the district court to make, the error cannot be 'clear' or 'obvious' unless the desired factual finding is the only one rationally supported by the record below."[21] Speedy trial claims are heavily fact-dependent, turning on not just the dates of events but also on inquiry into the reasons for the various periods of delay in bringing the case to trial. The defendant who appeals bears the burden of showing a speedy trial violation,[22] trial judges are presumed to have carried out their duties correctly,[23] and moreover there is the familiar principle of appellate litigation that when there are no factual findings on disputed issues, the record is construed in the light most favorable to upholding the trial court.[24]

---

[21] *United States v. Olivier-Diaz*, 13 F.3d 1, 5 (1st Cir. 1993). *See also United States v. Dunbar*, 718 F.3d 1268, 1280 (10th Cir. 2013) ("When the existence of an error depends on what the facts are . . . the error cannot be said to be 'plain' unless the facts are uncontestably established, either because they are undisputed or undisputable or because the factfinder made a proper finding of fact."); *United States v. Zhou*, 838 F.3d 1007, 1011 (9th Cir. 2016) ("[A]n error that hinges on a factual dispute is not 'obvious' as required by the 'plain error' standard."). State courts apply this same principle. *See Ailes v. Portland Meadows, Inc.*, 823 P.2d 956, 959 (Or. 1991) (explaining that plain error can only be found where the court is not required to "choose between competing [factual] inferences, and the facts constituting the error must be irrefutable"). The supreme court obliquely made this point in *Vaska v. State*, 135 P.3d 1011, 1019 (Alaska 2006), noting that an appellate court's authority to "affirm a trial court's ruling on any legal theory established in the appellate record" only applies "to issues of law that find support in settled facts" and does not apply when the legal issue turns on "disputed or disputable issues of fact."

[22] *See, e.g.*, *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) ("[D]efendant has the burden of proving the assertion of the right and showing prejudice." (citation omitted)).

[23] *See, e.g.*, *Lindell v. Coen*, 896 S.W.2d 525, 527 (Mo. App. 1995) ("We presume that trial courts 'faithfully and judiciously carry out their duties[.]'" (alteration in original) (quoting *Ramsey v. Grayland*, 567 S.W.2d 682, 688 (Mo. App. 1978))).

[24] *See Shay v. State*, 258 P.3d 902, 905 (Alaska App. 2011) ("In the absence of lower court findings on disputed issues, we view the record in the light most favorable to the lower court's ruling." (citing *State v. Smith*, 38 P.3d 1149, 1153 (Alaska 2002))).

The net result of the foregoing is that while speedy trial claims are technically amenable to plain error review, as a practical matter, the fact-dependent nature of such claims often makes it difficult to conclude that an asserted speedy trial violation amounted to plain error. Thus, courts often only engage in truncated analysis of such claims, or exercise their discretion not to engage in plain error analysis.[25]

Hernandez fails to demonstrate plain error. We must balance the four *Barker* factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."[26] Hernandez erroneously takes the view that if he can show that the first factor is satisfied, then courts must *sua sponte* examine the other factors, and he does not analyze the other factors, leaving them to be developed on remand. But in fact, we must look at all of the *Barker* factors to determine whether the trial court committed plain error with respect to Hernandez's speedy trial claims. I start with the first factor, length of delay, then look at the fourth factor, prejudice to the defendant, and last focus on the reasons for the delay and the assertion of the right.

The first factor, length of delay, is a triggering factor in the sense that a defendant has no potentially viable speedy trial claim unless the delay at issue exceeds a certain threshold length.[27] Under federal Sixth Amendment speedy trial analysis, the period of delay measures from the date the defendant is arrested or charged until the start of trial.[28] Here, the relevant delay — slightly over seven years — is indisputably sufficient to warrant examination of the other speedy trial factors.[29]

---

[25] *See Judd v. State*, 482 P.2d 273, 280 (Alaska 1971); *State v. Gutierrez-Fuentes*, 508 P.3d 378, 384-85 (Kan. 2022); *State v. Joseph*, 165 A.3d 241, 252-53 (Conn. App. 2017).

[26] *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

[27] *Id.*

[28] *See id.* at 533-34 (considering the length of the delay between arrest and trial).

[29] The majority errs in asserting that this first factor is assessed the same way — *i.e.*, by looking to the total time between arrest/charging and the start of trial — under the

The fourth *Barker* factor requires the court to assess any prejudice to the defendant that was caused by the delay. Prejudice may occur in the form of pretrial incarceration, the anxiety of facing criminal charges, and harm to the ability to defend one's case (*i.e.*, loss of evidence or witnesses, or faded memories), the last of which is the "most serious" form of prejudice.[30] Hernandez does not claim that he suffered any harm to his ability to defend his case. At oral argument, his attorney claimed that the record provided a basis to think that a beating that Hernandez suffered in prison in 2014 affected his later behavior, leading to his obstreperous behavior which led to him not being present at trial. But Hernandez's trial counsel made this claim at sentencing and the court explicitly rejected it, finding that his mid-2014 shift in behavior to non-

---

Alaska Constitution. Long-standing Alaska Supreme Court precedent requires courts assessing this first factor to calculate the length of delay by subtracting the delay attributable to the defendant from the overall period, and if the remaining figure exceeds fourteen months, then speedy trial analysis is triggered. *See Tarnef v. State*, 512 P.2d 923, 933 (Alaska 1973); *Rutherford v. State*, 486 P.2d 946, 952 n.15 (Alaska 1971). The majority asserts that since we adopted the *Barker v. Wingo* standard as the test for speedy trial claims under Alaska Constitution Article I, Section 11 in *State v. Mouser*, 806 P.2d 330, 340-41 (Alaska App. 1991), and the supreme court confirmed this in *State v. Wright*, 404 P.3d 166, 178 (Alaska 2017), that we now follow the federal approach as to the first factor. But in fact, post-*Mouser*, we have continued to follow the *Tarnef* approach. *See Holt v. State*, 1998 WL 80129, at *3 (Alaska App. Feb. 25, 1998) (unpublished); *Alvarez v. Ketchikan Gateway Borough*, 91 P.3d 289, 294-95 & n.18 (Alaska App. 2004); *Tix v. State*, 2011 WL 2437680, at *4 n.11 (Alaska App. June 15, 2011) (unpublished); *Wright v. State*, 347 P.3d 1000, 1008 & n.27 (Alaska App. 2015). The supreme court in *Wright* said nothing about overruling its prior precedents in this area. *See Wright*, 404 P.3d at 178. Although Alaska plain error law does not preclude appellate courts from modifying the law while a case is on appeal, and then deeming that a trial court's error was "plain" in light of that new law, *see Johnson v. State*, 328 P.3d 77, 83 & n.27 (Alaska 2014), only the supreme court can overrule its past precedents. I believe the supreme court would likely (and correctly) modify Alaska speedy trial law on this point if faced with the question, but it has not done so yet, and we are not in a position to do so. In any event I find it unnecessary to resolve the Alaska constitutional analysis as to this sub-issue because the length of delay here is sufficient to warrant speedy trial analysis under the federal constitution.

[30] *Barker*, 407 U.S. at 532.

---

cooperation with the court and defense counsel was simply part of his pattern of changing tactics whenever he felt he was cornered (in the sense that the case was genuinely advancing to resolution). The record supports this conclusion and, of most pertinence for plain error analysis, Hernandez's contrary assertion is not the only interpretation that the record will bear.[31] In short, the record does not show that the delay caused any harm to Hernandez's ability to defend his case.

The Supreme Court in *Doggett v. United States* recognized that extreme delay could turn into presumed prejudice that would count as prejudice for the fourth *Barker* factor.[32] Some courts have tried to create a taxonomy of prejudice under this factor and set bright-line rules that a particular number of years of delay will give rise to this sort of presumed prejudice.[33] But as Justice Souter, the author of *Doggett*, later explained, "*Doggett* did not purport to set any precise length of delay either necessary or sufficient to give rise to such presumptive prejudice[.]"[34] *Doggett* held that the

---

[31] At a representation hearing on July 16, 2014, Hernandez's counsel stated that Hernandez had recently been beaten by other inmates in prison, causing him to be in a coma for several days. But at that hearing and at a later August 29, 2014 representation hearing, Hernandez made lucid and decorous statements expressing his displeasure with his representation, statements that appear strongly inconsistent with any view that he suffered a traumatic brain injury that substantially affected his cognition or behavior. Hernandez did not begin to rely on sovereign-citizen-type language until proceedings later in that year, which is suggestive of adoption of tactics learned in the prison milieu, not brain damage.

At oral argument, Hernandez's counsel stated that "obviously the record does not support the nexus between the assault and his behavior change[,]" *i.e.*, meaning that the record did not clearly establish the nexus, while arguing that there was a sufficient basis to think that such a connection could be made so as to justify an evidentiary hearing.

[32] *Doggett v. United States*, 505 U.S. 647, 655 (1992).

[33] *See, e.g.*, *United States v. Serna-Villareal*, 352 F.3d 225, 232-33 (5th Cir. 2003) (collecting cases, concluding that a five-year delay gives rise to presumptive prejudice).

[34] *Butler v. Mitchell*, 815 F.3d 87, 91 (1st Cir. 2016). Justice Souter wrote *Butler* after

---

decision whether to recognize or give any weight to such presumed prejudice did not turn on the length of delay alone, and that it might be appropriate to give no weight to presumed prejudice where the reasons for the delay were entirely valid, or little weight where the defendant acquiesced in the delay.[35] Courts have thus declined to find presumed prejudice in cases where the delay was several years longer than the delay in this case, *i.e.*, where the delay was in the nine-to-eleven-year range.[36] In this case, Hernandez's counsel acquiesced in several years of delay, and it is thus not apparent that we should find presumed prejudice in the form of harm to Hernandez's ability to defend himself against the charges.

In any event, the Supreme Court recognized in *Doggett* that "presumptive prejudice [under the fourth *Barker* factor] cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria," and thus the core of the plain error analysis in this case turns on the other two factors, the reasons for the delay and the defendant's assertion of his right to a speedy trial.[37]

Turning to the "reason for the delay" factor, the Supreme Court summarized the law on this point in *Vermont v. Brillon*, stating:

> *Barker* instructs that "different weights should be assigned to different reasons," and in applying *Barker* we have asked "whether the government or the criminal defendant is more to blame for th[e] delay." Deliberate delay "to hamper the

retiring from the Supreme Court, sitting by designation on a First Circuit panel.

Hernandez's counsel at oral argument conceded that there was no clear rule stating that delays over a certain length of time give rise to presumptive prejudice that satisfies the fourth *Barker* factor.

[35]  *Doggett*, 505 U.S. at 656-58.

[36]  *See, e.g.*, *United States v. Cabral*, 979 F.3d 150, 165 (2d Cir. 2020) (eleven years); *United States v. Villarreal*, 613 F.3d 1344, 1355 (11th Cir. 2010) (ten years); *State v. Moran*, 711 N.W.2d 915, 922 (N.D. 2006) (nine years).

[37]  *Doggett*, 505 U.S. at 656.

defense" weighs heavily against the prosecution. "[M]ore neutral reason[s] such as negligence or overcrowded courts" weigh less heavily "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."[38]

And at the other end of the spectrum, the Court has noted that "pretrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down. We attach great weight to such considerations."[39] As to the defendant, "delay caused by the defense weighs against the defendant[,]" and "[b]ecause 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is also charged against the defendant."[40]

Applying the law to the existing record, I first weigh the prosecution's role in the length of time it took to bring Hernandez to trial. At oral argument, Hernandez's counsel conceded that there was no basis to conclude that the State had engaged in intentional or bad-faith delay. And nothing else in the record appears to weigh particularly heavy against the State. The State only filed two pretrial motions, a motion for an *in camera* review of a police officer's internal affairs file and a motion to continue the trial date due to witness unavailability, which did not significantly delay the proceedings, taking respectively five months and four days to resolve each motion. The State went through multiple prosecutors during the case, which added some delay. And the State did not announce that it was "discovery complete" until a hearing on

---

[38] *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (alteration in original) (citations omitted).

[39] *Doggett*, 505 U.S. at 656.

[40] *Brillon*, 556 U.S. at 90-91 (first alteration added, second alteration in original) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)).

October 30, 2013, when the case was slightly over two years old. But this delay in getting all of the discovery out in this complex case does not on its face suggest that the State waited until the end of that period to get the significant discovery to Hernandez's counsel, because counsel was able to file a motion to dismiss the indictment and a motion to dismiss based on improper joinder during that time.[41] Of the seven years and two months that it took to get the case to trial, it appears that perhaps two and one-half years of delay, at best, are attributable to the State, a time period that in and of itself would not generally be viewed as a speedy trial violation in a case of this complexity.

By contrast, most of the delay in this case appears attributable to the defense. Hernandez's various attorneys requested over thirty continuances over the life of this case. There are another twenty-five continuances that appear to be the joint product of the prosecution and defense. Hernandez went through five attorneys in this case, including taking action to force out one attorney who was ready to try the case.[42] Hernandez deluged the court with *pro se* sovereign-citizen filings, despite the fact that they were routinely returned to him since he was represented by counsel. Hernandez's

---

[41]  The concurrence notes that Hernandez filed a forty-eight page motion to compel discovery on the eve of trial. But review shows that much of it is devoted to a lengthy recitation of the convoluted investigative and pretrial history of the case, and much of it is devoted to a lengthy but ultimately boilerplate recitation of the law on discovery. Buried in the motion counsel did provide a list of discovery items where she claimed discovery was incomplete, but these matters were resolved by the start of trial.

[42]  The majority notes two counsel changes that are troubling and not entirely attributable to the defense. First, the court allowed one attorney to withdraw after several years of representation, when it was learned that the attorney's wife represented, in a separate case, a witness in this case, and did so without inquiring whether it was possible for the attorney's wife to withdraw from her representation. This was perhaps attributable to a practice noted by Judge Harbison in *Perez v. State*, 521 P.3d 592, 603 (Alaska App. 2023) (Harbison, J., concurring), of courts "allow[ing] the [defense] agencies themselves to determine when and whether conflict counsel will be appointed to represent the defendant." And the court later granted Hernandez's request to discharge another attorney even though the attorney asserted that he felt capable of representing Hernandez despite the latter's displeasure with him.

counsel filed several pretrial motions that in the aggregate took approximately six and one-half months to resolve.

Of most significance with respect to defense-caused delay, from late August of 2014 onwards, Hernandez simply refused to cooperate with his assigned counsel or the court. It began with a request to discharge his counsel, and ultimately culminated in a situation where Hernandez was removed from every pretrial hearing and trial, because he could not conform his conduct to the rules of court. When he was brought into court at the beginning of a hearing or trial day, he would immediately launch into the same sovereign-citizen-type diatribe on each occasion, denying that his name was Ralph Hernandez and requesting to be addressed as the "beneficiary," stating he had "reserved his rights," that the court had no jurisdiction over him, referring to the judge as "the administrator," demanding that the clerk of court "close his account" and release him from custody, *etc*. It is difficult to demonstrate Hernandez's level of obstreperousness and keep this dissent relatively brief, but the judge aptly noted at sentencing that "Mr. Hernandez is perhaps the most manipulative person I've ever dealt with in the criminal justice system which I started dealing with over forty years ago."

Balanced against this is the issue of Hernandez's assertion of the right. None of Hernandez's attorneys moved to dismiss the case as untimely, either under Criminal Rule 45 or a state or federal constitutional speedy trial claim. To be sure, Hernandez personally vociferously asserted the right from mid-2014 on, in person at the beginning of court hearings and in numerous *pro se* filings. But the assertion of the right may be entitled to little weight when the defense or defendant engages in a course of conduct at odds with a desire to speedily try the case, *i.e.*, when the defendant drags things out or is intentionally disruptive.[43] That appears to be the case here.

---

[43] *See, e.g.*, *Brillon*, 556 U.S. at 93-94; *United States v. Oriedo*, 498 F.3d 593, 600 (7th Cir. 2007).

In sum, balancing all of the factors, the bulk of the delay appears to be attributable to Hernandez, his assertions of the right to a speedy trial are entitled to little weight in light of his simultaneous behavior obstructing progress towards trial, and he has identified no prejudice to his ability to defend against the charges. Admittedly, Hernandez was incarcerated during this time, but even taking that into account, it cannot be said on this record that there is a plainly obvious violation of Hernandez's right to a speedy trial. Indeed, a federal magistrate judge entertaining this same speedy trial claim asserted in a habeas corpus petition concluded that despite the "concerning" delay in getting his case to trial, Hernandez had not shown a speedy trial violation.[44] The magistrate judge's conclusion is not binding on this Court as a matter of law, but in my view represents a correct and realistic assessment of Hernandez's speedy trial claim. This Court should affirm Hernandez's conviction, not remand this matter for a hearing on his speedy trial claim.

The majority, without explicitly analyzing all of the *Barker* factors, states that "there are still issues to resolve regarding the underlying reasons for the delay." But under the standard that should be applied, plain error review, the lack of clarity is fatal to Hernandez's speedy trial claim. If it cannot be determined from the record that an impermissible amount of delay is attributable to the government, then Hernandez has not met his burden of showing a plainly obvious speedy trial violation.

The final reason that I write separately is to address concerns I have with the systemic ramifications of the majority decision, and issues trial courts should consider when faced with *pro se* speedy trial claims raised by represented defendants.

First, I find the majority's position in this case inadvisable because it incentivizes obstreperous behavior on the part of litigants. The unintended message the

---

[44] *See Hernandez v. Lyou*, 2019 WL 13241626, at \*7 (D. Alaska Aug. 29, 2019) (final report and recommendation of United States Magistrate Judge Matthew M. Scoble). The United States District Court dismissed the petition for failure to exhaust state remedies, and the Ninth Circuit affirmed in *Hernandez v. Lyou*, 817 Fed. Appx. 498 (9th Cir. 2020).

decision sends to criminal defendants is this: totally refuse to cooperate with the court and your attorney, and drag things out as long as possible. Then, when it has taken more than five years to get your case to trial, the appellate courts will conclude that you might have a valid speedy trial claim and send your case back to the trial court on remand, at which you may manage to convince the court to dismiss your case entirely. In his remarks at sentencing, Judge Wolverton, an experienced jurist with over thirty years on the bench, warned against courts being manipulated by defendants who abuse the litigation process. He was right, and we should not reward such behavior.

Second, the majority appears to be endorsing a rule that whenever the delay between arrest or charging and trial is sufficient to trigger a speedy trial analysis, the trial court *must* engage in such an analysis when a represented defendant asserts their speedy trial rights *pro se*, even when their counsel does not file a speedy trial motion. I believe that the decision whether to consider a *pro se* speedy trial motion filed by a represented defendant must remain discretionary with the trial court. Motions filed by counsel are far more likely to have merit, and in the current posture the Alaska Court System finds itself in, with many defendants having had their trials delayed due to the pandemic, it seems an unwise expenditure of judicial resources to require a speedy trial analysis whenever a represented defendant makes a *pro se* assertion that their speedy trial rights have been violated. I recognize that courts have *discretion* to entertain such claims, but that discretion should only be exercised when warranted.[45] That said, I agree with the majority that both trial courts and prosecutors must be more vigilant in bringing cases to trial in a speedy fashion, and in not perpetuating the "culture of continuances" which continues to be a key factor in pretrial delay.

---

[45] In some cases courts may find it appropriate to delay ruling on a speedy trial claim until after trial, when there is a more concrete record against which to assess a defendant's claim that the delay in trying the case prejudiced his ability to present a defense. *See, e.g.*, *People v. Martinez*, 996 P.2d 32, 45-46 (Cal. 2000).

Third, trial courts should take care to be clear about what they are doing when faced with *pro se* speedy trial claims asserted by represented defendants. If a trial court decides not to address such a claim on the merits, it should make clear that it is not doing so and avoid using words which may make the defendant erroneously conclude that their claims have been addressed on the merits.

In sum, for the reasons stated above, I conclude that Hernandez did not preserve a federal or state constitutional speedy trial claim in the superior court, and that such claims are thus reviewable only for plain error. Applying plain error analysis, Hernandez's case fails to show a plainly obvious speedy trial violation that warrants relief. Accordingly, I would affirm the judgment of the superior court.

I respectfully dissent.